# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARMILLA TATEL, individually and as parent and natural guardian of her children; STACY DUNN, individually and as parent and natural guardian of her children; and GRETCHEN MELTON, individually and as parent and natural guardian of her children.<br><br>    Plaintiffs<br><br>            v.<br><br>MT. LEBANON SCHOOL DISTRICT; THE MT. LEBANON SCHOOL BOARD; MEGAN WILLIAMS; DR. TIMOTHY STEINHAUER; DR. MARYBETH D. IRVIN; BRETT BIELEWICZ; JACOB W. WYLAND; VALERIE M. FLEISHER; TODD W. ELLWEIN; ANDREW D. FREEMAN; ERIN C. GENTZEL; CLAIRE B. GUTH; DR. JUSTIN D. HACKETT; ANAMARIA A. JOHNSON; and SARAH L. OLBRICH.<br><br>    Defendants | Civil Docket No.: 2:22-cv-837<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

I.   The Constitutional Rights at Issue ....................................................................................... 1

II.  Factual Background Supporting Preliminary Injunctive Relief............................................ 3

   A.   The Pennsylvania School Code and Mt. Lebanon's Policies (on Paper)............................ 3

   B.   Williams' Instruction on Gender Dysphoria and Transgender Transitioning and the District's Creation of Policies, *De Facto* or Otherwise, Condoning and Supporting Instruction on These Topics .................................................................................................................... 7

   C.   A Preliminary Injunction is Necessary to Protect Against Further Violation of Plaintiffs' Constitutional Rights ............................................................................................................. 10

III. Argument ............................................................................................................................ 12

   A.   The Standard to Grant Preliminary Injunction................................................................ 12

      1.   Plaintiffs are Likely to Succeed on the Merits............................................................. 12

      2.   Plaintiffs are Likely to Suffer Irreparable Harm Without Relief................................. 13

      3.   The Balance of Harms Favors Plaintiffs and the Requested Relief is in the Public Interest................................................................................................................................ 14

IV.  Conclusion ......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994) ....................... 15

Ayers v. Pocono Mountain Sch. Dist., 710 F.3d 99 (3d Cir. 2013).............................................. 15

Dep't of Human Res. of Ore. v. Smith, 494 U.S. 872 (1990)....................................................... 14

Elrod v. Burns, 427 U.S. 347 (1976) ........................................................................................... 14

Gruenke v. Seip, 225 F.3d 290 (3d Cir. 2000).......................................................................... 1, 2

Issa v. School District of Lancaster, 847 F.3d 121 (3d Cir. 2017) ....................................... 13, 15

Johnson v. Poway Unified Sch. Dist., 658 F.3d 954 (9th Cir. 2011)........................................... 12

Karakozova v. Univ. of Pittsburgh, 2009 WL 1652469 (W.D. Pa. June 11, 2009)..................... 13

Mayer v. Monroe Cnty. Cmt. Sch. Corp., 474 F.3d 477 (7th Cir. 2007)................................. 8, 12

Meyer v. Nebraska, 262 U.S. 390 (1923) ...................................................................................... 2

Moore v. East Cleveland, 431 U.S. 494 (1977)............................................................................. 2

Nebraska Press Ass'n v. Stuart, 423 U.S. 1327 (1975)............................................................... 14

Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990)13

Pierce v. Society of Sisters, 268 U.S. 510 (1925)..................................................................... 2, 14

Prince v. Massachusetts, 321 U.S. 158 (1944) ............................................................................. 2

Punnett v. Carter, 621 F.2d 578 (3d Cir. 1980) .......................................................................... 13

Reilly v. City of Harrisburg, No. 16-3722, 2017 WL 2272114 (3d Cir. May 25, 2017).............. 13

Troxel v. Granville, 530 U.S. 57 (2000)........................................................................................ 2

**Statutes**

22 Pa.Code §4.4(d) ........................................................................................................................ 6

24 P.S. § 13-1327......................................................................................................................... 14

42 U.S.C. § 1983.......................................................................................................................... 14

**Other Authorities**

Fed. Prac. & Proc., § 2948.1 (3d ed. Apr. 2012 update).............................................................. 16

While schools and teachers serve an *in loco parentis* function while a child is at school, "[p]ublic schools must not forget that '*in loco parentis*' does not mean 'displace parents.'" *Gruenke v. Seip*, 225 F.3d 290, 307 (3d Cir. 2000). In contravention of their proper role as public educators and leaders of the District, as well as the District's published curriculum and instructional materials, the Defendants have violated, are violating, and will continue to violate Plaintiffs' Constitutional rights by "displacing" them as parents. Contrary to Plaintiffs' desires, the District has taught, and has indicated it will teach in the future, the subjects of gender dysphoria and transgender transitioning to students in the District, **including in elementary school to first graders**. Defendants have adopted a policy of not only permitting teaching of this subject matter but of doing so without it being in the published curriculum or list of published instructional materials, without any notice to parents, without any ability of parents to review instructional materials, and without any rights of parents to opt out of the instruction, even though notice and opt out rights are provided for a variety of other subjects including instruction related to the Holocaust, slavery, the 9/11 terrorist attacks, reproductive education, sex education, Black Lives Matter, and Planned Parenthood.

In addition to proving that the Defendants have violated Plaintiffs' Constitutional rights, at a hearing, Plaintiffs will prove via expert testimony that teaching these subjects to young children can have harmful, unintended ramifications.

### I. The Constitutional Rights at Issue

Plaintiffs have a Constitutionally protected liberty interest in the care, custody, and control of their children, including their education. This is one of the oldest fundamental liberty interests recognized under the Constitution. Nearly a century ago, the U.S. Supreme Court held that the "liberty" protected by the Due Process Clause includes the right of parents "**to control the**

**education of their [children].**" *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923) (emphasis added). The Supreme Court has subsequently held (and repeatedly reaffirmed) that the "liberty of parents and guardians" includes the right "**to direct the upbringing and education of children under their control**." *Pierce v. Society of Sisters,* 268 U.S. 510, 534–535 (1925) (emphasis added); *Troxel v. Granville*, 530 U.S. 57, 65-67 (2000). Defendants' conduct clearly violates these rights.

The Due Process Clause of the 14th Amendment to the United States Constitution also protects the sanctity of the family as an institution and this is deeply rooted in this Nation's history and tradition through which moral and cultural values are passed down. *Moore v. East Cleveland*, 431 U.S. 494, 503-04 (1977). The Constitution protects this private realm of the family from interference by the state. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). Defendants' conduct, likewise, violates this right. The Due Process Clause of the 14th Amendment to the United States Constitution also protects the right of individuals to have independence in making individual decisions regarding fundamental rights, including education. *See Gruenke v. Seip,* 225 F.3d 290, 302 (3d Cir. 2000). Here, in substance and in violation of this right, the Defendants have displaced the Plaintiffs' children's rights as decision makers.

The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to free exercise of religion. U.S. Const., Amend. I. In this regard, Plaintiffs have sincerely held religious and moral beliefs including that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity, and biological reality, as either male or female. Plaintiffs also have sincerely held religious and moral beliefs that parents have the non-delegable duty to direct the upbringing and beliefs and religious training of their children. The

Districts permission of instruction on gender dysphoria and transgender transitioning, particularly doing so in elementary school and doing so without notice and opt out rights, violates Plaintiffs' First Amendment rights.

Likewise, the Equal Protection Clause of the 14th Amendment provides protection for citizens against unequal application or enforcement of laws. U.S. Const., Amend. XIV. By providing notice and opt our rights for other subjects but not for instruction related to gender dysphoria and transgender transitioning, Defendants' have violated the Equal Protection Clause.

A Preliminary Injunction is needed to prevent the Defendants' from continuing to violate Plaintiffs' Constitutional rights now and in the future, including in the upcoming school year starting in August/September 2022.

## II. Factual Background Supporting Preliminary Injunctive Relief

### A. The Pennsylvania School Code and Mt. Lebanon's Policies (on Paper)

In recognition of and clearly derived from some or all of the above Constitutional rights, the Pennsylvania School Code requires, *inter alia,* parental access to information about a school's curriculum including **instructional materials**, a process for parents to review instructional materials, and "opt out" rights from specific instruction based on beliefs covered by the First Amendment. 22 Pa.Code §4.4(d) (emphasis added). School Districts, by law, are required to adopt policies recognizing these parental rights. *Id.*

The District's Policy I(J) concerns selection of "**Instructional Materials**," which includes digital media, video and audio materials. Per 22 Pa.Code §4.4(d), the District is required to have a process for parents to review "instructional materials," which, under the Policy I(J), includes digital media, video and audio materials. A copy of Policy I(J) is attached as Ex. 2 to the Motion. Under District Policy I(J), "Subject to final approval by the Board where required by law, the responsibility of selecting **instructional materials** and resources rests with the Superintendent

3

and, the appropriate administrators, who may delegate the responsibility for recommending selections to professional personnel employed by the District." Policy I(J) further requires that "Instructional materials and resources on controversial issues shall be selected to maintain a balanced collection representing various views" and mandates that "Instructional materials and resources shall be appropriate for the subject area and for the age, emotional development, ability level, learning styles and social development of the students for whom the materials are selected."

Policy I(F), titled "Curriculum and Parental Rights," expressly acknowledges that "parents and guardians of students have the right to access and review **information** concerning the instruction, assessment and academic progress of their children." (emphasis added). Policy I(F) further provides that the parental rights from the Pennsylvania School Code should be adhered to by, *inter alia*, providing "access to **information** about the curriculum, including academic standards to be achieved, **instructional materials**, and assessment techniques[,]" "a process for the review of **instructional materials**[,]" and opt out rights related to instruction that conflicts with First Amendment beliefs. (emphasis added). The Policy also guarantees that "Parents and guardians of students enrolled in the District have the **right to access and review instructional materials** for courses in which their children are enrolled and all assessment materials that have been administered to their children." (emphasis added). Policy I(F) is Ex. 3 to the Motion.

The Administration is responsible for developing "the procedures necessary to implement [Policy I(F)], including [by] making available to parents and guardians information regarding the academic standards to be achieved, **instructional materials**, and assessment techniques, **including instructional materials for courses in which their children are enrolled** and all assessment materials that have been administered to their children and **developing a process for parents/guardians to access and/or review such instructional materials** and assessments

4

administered to their children" and "**notifying** parents and guardians of their **right** to have their child(ren) excused from specific instruction which conflicts with their [First Amendment] beliefs."

Additionally, in recognition of the parental rights underlying these policies, the District publishes and makes available on its website the "Mt. Lebanon School District Elementary Curriculum Grade 1 Curriculum" (hereinafter Grade 1 Curriculum) and Curriculum for other grades. Not surprisingly, on its face, the published Grade 1 Curriculum does not mention or discuss teaching gender dysphoria and transgender transitioning to first graders. Nor does the curriculum for any other elementary grade (or any grade, period). A copy of the Curriculum for each of grades 1 though 5 is attached as Ex. 4 to the Motion.

The Grade 1 Curriculum contains a "Counseling" section and indicates:

> All first-grade students participate in the school counseling program through regular classroom guidance lessons. This curriculum consists of structured lessons, delivered by the school counselor in the classroom, designed to help students attain the academic, career and social/emotional competencies and to provide all students with the knowledge, attitudes and skills appropriate for their developmental level. The first-grade classroom lessons are designed to further develop school success skills such as accepting mistakes and setting goals, friendship and social problem solving skills, feeling identification, communication and self-management skills, **diversity, inclusion** and career awareness.

(emphasis added). This reference to diversity and inclusion is the only reference to this subject in the Grade 1 Curriculum. The references for other elementary grades are substantively the same.

The District further publishes a detailed breakout of each subject that is generally described in the Curriculum for each grade. This detailed breakout is only accessible by parents via a parent portal that is password protected. In these detailed breakouts, the teaching of Diversity and Inclusion is mentioned in only one subject, "School Counseling Classroom Lessons (D)". The detailed Counseling curriculum does not mention or discuss teaching gender dysphoria and transgender transitioning to first graders or other grades. The lessons covered by the Counseling

5

curriculum breakout indicate that these lessons will be taught by professional school counselors. This is similar for other grades. A copy of the detailed breakout of Curriculum for each of grades 1 through 5 is found at Ex. 5 to the Motion. Teaching DEI issues or initiatives in first grade (or any other elementary grade) is not mentioned in any other curriculum detail for any subject.

In late 2020, the District formed a DEI Taskforce, as well as a DEI Committee of the Board. Based on meeting agendas published by the District, **teaching gender dysphoria and transgender transitioning, let alone to elementary students including first graders, has never been on a meeting agenda for the Taskforce**. Copies of the DEI Committee agendas are attached as Ex. 6 to the Motion. A Community Forum was held by the Taskforce in May 2021. **Teaching gender dysphoria and transgender transitioning, let alone to elementary students including first graders, was not discussed at the Community Forum**. A video of the Community Forum can be found at https://www.mtlsd.org/about-us/district-news/details/~board/district-news/post/dei-taskforce-community-forum-video-now-online.

The DEI Committee of the Board has met monthly since October of 2020. Prior to Defendant Williams teaching gender dysphoria and transgender transitioning to her first-grade class in late March 2022, **the DEI Committee had not discussed, let alone approved, teaching gender dysphoria and transgender transitioning to first graders**. There was no discussion of books or videos to be used with elementary students including first graders by the DEI Committee. In fact, there appears to have been no discussion about DEI instruction in first grade at all by the DEI Committee. *See* Ex. 7 (Jensen Decl.) to the Motion.[1]

---

[1] The DEI Committee presented its draft plan at a Board meeting on June 14, 2022. Neither the plan or discussion at the meeting addressed in-class instruction on gender dysphoria and transgender transitioning at all, let alone in elementary school, let alone to first graders. The discussion by Dr. Irvin in presenting the draft plan indicated that a DEI curriculum was "pending" and that the District needed to retain outside consultants to help develop a DEI curriculum. There

Given these District publications and resources, the District in substance told parents that, to the extent DEI initiatives would be taught in elementary school, it would be done by professional counsellors, not teachers. No notice or information was provided to parents indicating that gender dysphoria and transgender transitioning would be taught at all. Unfortunately, what the District told parents was false.

**B.     Williams' Instruction on Gender Dysphoria and Transgender Transitioning and the District's Creation of Policies, *De Facto* or Otherwise, Condoning and Supporting Instruction on These Topics**

In October 2021, Defendant Principal Bielewicz assured two concerned Jefferson Elementary School (JES) parents that "there is no formal introduction or lessons surrounding [gender identity] at JES, **especially in the 1ˢᵗ grade**." Compl. ¶88. In contravention of this, without the District providing notice of instruction or opt-out rights, Defendant Williams on multiple occasions taught Plaintiffs' children, who were in her first-grade class, about gender dysphoria and transgender transitioning and, in a variety of other ways violated parents' and her students' Constitutional rights. Compl. ¶¶ 49-108.[2] The allegations in these paragraphs will be proven through testimony and exhibits at a hearing. This includes:

Williams told the child of one of the Plaintiffs that he "can wear a dress and have hair like [his] mom." Plaintiff raised this with Williams at a parent-teacher conference, expressing her

---

was no specific discussion about a curriculum involving gender dysphoria and transgender transitioning.

[2]     Defendant Williams is the mother of a transgender child who, like her students, is in the first grade. While that may give her unique perspectives and views on gender dysphoria and transgender transitioning, it does not give her the right to impose those views on a captive audience of six and seven-year-old children. Compl. ¶54. *E.g., Mayer v. Monroe Cnty. Cmt. Sch. Corp.*, 474 F.3d 477 (7th Cir. 2007) (upholding decision not to renew teacher's contract because of her expression of political views in classroom).

7

displeasure with what Williams had said to her son. Despite knowing this Plaintiff's objections, throughout the school year, Williams had private conversations with this young boy, suggesting that the boy might want to wear a dress, and telling the child that he could be like her own transgender child, who is also in the first grade. Williams explained to this young boy that "doctors can get it wrong sometimes." In the course of these private discussions, Williams also told this young boy that if the subjects they were discussing came up at home, to say that "I heard it from a little birdie." Compl. ¶¶ 78-79.

On March 31, 2022 (Transgender Day of Visibility) Williams sought approval, and received it, from Defendant Bielewicz to play two videos and/or read two books while video illustrations played to her first-grade class: (1) When Aiden Became a Brother (https://www.youtube.com/watch?v=8F2_UR4y0iw) and (2) Introducing Teddy (https://www.youtube.com/watch?v=ddRmNpLYgCM). The clear and obvious subject matter of each of these books is the discussion of gender dysphoria and transgender transitioning. Compl. ¶¶ 80-108. In conjunction with the videos/books, Williams discussed gender dysphoria and transgender transitioning with her class. This instruction was in direct conflict with what Bielewicz told one set of parents previously: "there is no formal introduction or lessons surrounding [gender identity] at JES, **especially in the 1st grade**."

Neither of these books is listed on any curriculum, list of instructional materials, or book list for first grade instruction in the District or part of any instructional materials made available to parents by the District. In clear violation of Pennsylvania law and District policy, parents had no notice that these books/videos would be played, nor were they provided an opt out right. *Id.* Williams provided direct classroom instruction regarding gender dysphoria and transgender transitioning to her six and seven-year-old captive audience of children, explaining that sometimes

"parents are wrong" and parents and doctors "make mistakes" when they bring a child home from the hospital. *Id.*

After Williams' direct instruction on gender dysphoria and transgender transitioning some of her six and seven-year-old students were rightfully confused. One child expressed to her mother that she was confused by the videos and wondered if the child's favorite stuffed animal (a pink teddy bear) that she had always treated as a boy should now be treated as a girl. Another child asked her mom, "how do you know that I am a girl." One child who was confused by the books/videos politely approached Williams privately in class and, showing the child's confusion, asked her if she (Williams) had ever changed her own child's diaper because that would, to this child's understanding, solve the issue of whether the child was a boy or a girl. These reactions confirm the inappropriateness of teaching these topics in a public school; in particular, the inappropriateness of teaching them in elementary school, including to first graders. *Id.* These reactions will be the subject of expert testimony at a hearing.

One Plaintiff met with Williams about the instruction and voiced her objections informing Williams that she would like to be the one responsible for having these conversations with her child, not Williams, and that she felt this was outside the scope of Williams' job and role. In response, Williams informed her that they would "need to agree to disagree," that "100% I have an agenda," that she teaches "right on the edge" and that she had no intent of stopping her instruction.  Williams indicated that Bielewicz and the Board had approved the videos. *Id.* ¶94.

Weeks after the instruction, one Plaintiff, who had removed her son from Williams' class, received a private call from Williams. During the course of the phone call, Williams said to Plaintiff, "as long as I am on this earth, I am going to teach children what **I feel** they need to know" and hung up. Compl. ¶106. Such a statement can only reasonably be construed as a promise to

continue teaching about gender dysphoria and transgender transitioning among her pupils. As this phone call exemplifies, in Williams' classroom, there is absolutely zero recognition of Constitutionally protected parental rights if the expression of those rights is at odds with her own agenda ("I am going to teach children what **I feel** they need to know").

After Williams' instruction on these topics, certain of Plaintiffs communicated with Bielewicz and/or Superintendent Steinhauer. Both Bielewicz and Steinhauer indicated that they approved of the instruction and would not prevent similar instruction in the future. *Id.* ¶¶ 95-101, 104-05. Defendant Irvin, the Assistant Superintendent in charge of elementary education has made public statements approving of the instruction and claiming its appropriateness. *Id.* ¶102. Williams' instruction has been discussed at, at least, three School Board meetings. The Board, including Defendant Wyland, has expressed opinions favorable to the instruction. *Id.* ¶¶ 8 and 103. Excerpts from certain of these Board meetings will be played at a hearing. Neither Superintendent Steinhauer or the Board has issued any new Policy, announcement or guidance indicating that Policy I(F) and other District policies will be followed in the future as to this instruction, thereby creating, at a minimum, an express and/or *de facto* policy of permitting instruction on gender dysphoria and transgender transitioning in the District, including permitting such instruction in elementary school, without it being in the curriculum and without instructional materials going through the required process and procedures, and of not providing parental notice and opt out rights related to the teaching of these topics in the District.

C. **A Preliminary Injunction is Necessary to Protect Against Further Violation of Plaintiffs' Constitutional Rights**

As the above, as well as the other allegations in the Complaint, demonstrates Defendants have violated, are violating, and will continue to violate, *inter alia*, Plaintiffs' Constitutional rights listed in Section II above. Defendants' unconstitutional behavior involves affirmative, coercive,

compelled conduct by the Defendants including but not limited to Williams' in-class instruction related to gender dysphoria and transgender transitioning in elementary school to a captive audience of grade school students and the other Defendants' express and/or *de facto* policy in favor of this teaching, as well as doing so without these subjects or the instructional materials being in the published curriculum and without any parental notice and opt out rights. The students were required to participate in this instruction as part of their first grade class activities conducted by their public school teacher. There does not exist a compelling state interest in teaching gender dysphoria and transgender transitioning in the District, including in elementary school, including doing so without providing appropriate notice and opt out rights that outweighs Plaintiffs' Constitutional rights. Likewise, Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve and are an arbitrary and irrational use of power. The above is self-evident from, *inter alia*, the published curriculum provided to Plaintiffs and the availability of notice and opt out rights related to certain historical and scientific subjects of less magnitude.

Defendants' actions have resulted in, are resulting in, and will continue to result in deprivation of Plaintiffs' fundamental Constitutional rights. Such is a violation under the color of state authority of federally protected Civil Rights in violation of 42 U.S.C. § 1983. Plaintiffs have not received any assurance from the District that their rights will be respected in the future. To the contrary, through its express and/or *de facto* policy in favor of this instruction, the District and its representatives have approved of the instruction and indicated an intent to permit it in the future. The District has presented to Plaintiffs an unconstitutional ultimatum: either waive their Constitutional rights or remove their children from the District. *See Mayer,* 474 F.3d 479 (7th Cir.

2007); *accord*, *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 968 (9th Cir. 2011).[3]

Before the beginning of the next school year, Plaintiffs must know whether this Court will uphold their Constitutional rights or whether the District is permitted to teach gender dysphoria and transgender transitioning in a public school, including to elementary students as young as the first grade without the adoption and publication of appropriate curriculum and instructional materials and, if they are, whether notice and opt out rights must be provided. Time is of the essence, and harm will be suffered if immediate relief is not granted. Plaintiffs have no adequate remedy at law to correct the continuing and threatened deprivation of their fundamental rights.

### III.   Argument

**A.   The Standard to Grant Preliminary Injunction.**

In order to obtain preliminary injunctive relief, Plaintiff must establish "(i) that he is likely to succeed on the merits, (ii) that he is likely to suffer irreparable harm in the absence of preliminary relief, (iii) that the balance of equities tips in his favor, and (iv) that an injunction is in the public interest." *Issa v. School District of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017). "[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, uncontested status of the parties." *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 197 (3d Cir. 1990) (citation and quotation omitted) (*holding modified by Reilly v. City of Harrisburg*, No. 16-3722, 2017 WL 2272114 (3d Cir. May 25, 2017)). Further, "it is not incumbent on the movant to prevail on all four factors, only on the overall need for an injunction." *Karakozova v. Univ. of Pittsburgh*, 2009 WL 1652469 at *2 (W.D. Pa. June 11, 2009).

**1.   Plaintiffs are Likely to Succeed on the Merits.**

Regarding the first requirement, related to likelihood of success on the merits, Plaintiffs

---

[3]   Education is mandatory in the Commonwealth of Pennsylvania. 24 P.S. § 13-1327.

are not required to show that "the right to a final decision after trial be 'wholly without doubt'; the movant need only show a 'reasonable probability' of success." *Issa*, 847 F.3d at 131, *citing Punnett v. Carter*, 621 F.2d 578, 583 (3d Cir. 1980). Plaintiffs have a reasonable probability of success on the merits under the causes of action and facts set forth in the Complaint, outlined above, and to be proved at a hearing if necessary.[4]

### 2. Plaintiffs are Likely to Suffer Irreparable Harm Without Relief

On the second prong, irreparable harm is likely if preliminary injunctive relief is not granted. A violation of a Constitutional right is *per se* irreparable harm. *See* 11A Charles Alan Wright & Arthur P. Miller, Fed. Prac. & Proc., § 2948.1 (3d ed. Apr. 2012 update). That is especially true of First Amendment liberties. S*ee Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Nebraska Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975) ("[A]ny First Amendment infringement that occurs with each passing day is irreparable."). In *Pierce*, the Court also held that the deprivation of a fundamental parental right regarding education was an irreparable injury. *Pierce*, 268 U.S. at 536. Additionally, Defendants have demonstrated an intention to permit in-class instruction, including in elementary school, on gender dysphoria and transgender transitioning. Defendants have done so in contravention of the District's published curriculum and instructional materials and without any commitment to provide notice and opt out rights. Thus, it is likely that Plaintiffs' Constitutional rights will be violated in the future. This is classic irreparable harm. *Id.*[5]

---

[4] Having presented the Court with a hybrid constitutional rights claim that incorporates threats to the rights of free exercise, substantive due process, and the equal protection of the laws, Defendants will have to show that teaching about gender dysphoria and transgender transitioning can survive strict scrutiny. *E.g., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 882 (1990).
[5] Plaintiffs also anticipate presenting expert testimony as to how Defendants' actions can negatively impact children in a manner not compensable with money.

13

### 3. The Balance of Harms Favors Plaintiffs and the Requested Relief is in the Public Interest.

Third and fourth, the balance of harms favors the entry of a preliminary injunction, as does the public interest. "If a plaintiff proves 'both' a likelihood of success on the merits and irreparable injury, it 'almost always will be the case' that the public interest favors preliminary relief." *Issa*, 847 F.3d at 143, citing *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). Furthermore, the Third Circuit has acknowledged that unconstitutional state action is *always* contrary to the public interest. *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 114 (3d Cir. 2013) ("enforcement of an unconstitutional law vindicates no public interest.").

The District is usurping Plaintiffs' parental rights over their children. It has forced and will continue to force them to engage in conversations about gender identity at a time and age that is contrary to their parents' wishes. Defendants, on the other hand, have not included instruction on gender dysphoria and transgender transitioning in their own published curriculum and instruction materials.[6] Moreover, a preliminary injunction would in no way limit Defendants' ability to promote the overarching goals of kindness, respect, inclusivity, tolerance and dignity for all. Those are lessons that have been taught and learned by students for years without any need to introduce the topics of gender dysphoria and transgender transitioning.

Abridging Plaintiffs' constitutional rights is by definition contrary to the public interest, as

---

[6] Further, at a minimum, Defendants need only follow their own policies and Pennsylvania law as far as appropriate processes and procedures for published curriculum and instructional materials and by providing notice and opt out rights to Plaintiffs. Nor can it be maintained that such procedures for published curriculum and instructional materials and notice and opt-out rights harm Defendants in any way. Their only effect is to give the public a say in curriculum and instructional materials and to inform parents of what their children are being taught in class, giving them an opportunity to shield their children from topics to which they object or do not feel their children are quite ready to discuss.

is conduct in derogation of the parental rights provisions of Pennsylvania's school code. Thus, the entry of a preliminary injunction serves the public interest as a matter of law, and neither Defendants nor the public will be prejudiced by an entry of an Order enjoining Defendants from teaching the subjects of gender dysphoria and transgender transitioning in the District contrary to the published curriculum and instructional materials, including in elementary school, including doing so without providing parental notice and the ability to opt out.

## IV.     Conclusion

The Mt. Lebanon School District has violated the Plaintiffs' parental rights by presenting material to their young children that is outside of its published curriculum and has done so without providing notice or an opt out option that would allow Plaintiffs to exercise their right to oversee the education of their children. For the reasons stated, this Court should grant Plaintiffs' Motion for Preliminary Injunction, enjoining Defendants from (i) conducting and permitting instruction on gender dysphoria and transgender transitioning in the District, including in elementary school, without expressly including it in the curriculum whereby it and any instructional materials would go through appropriate review processes and procedures and/or, **in the alternative**, (ii) prohibiting the District from teaching these subjects, including in elementary school, without parental notice and opt out rights, and (iii) prohibiting the District from doing so without providing access to all materials to be used in any such instruction reasonably in advance to parents through appropriate technological means (i.e., parent portal) so as to make notice and opt out rights meaningful.

Dated:  June 16, 2022	Respectfully submitted,

        By:	 s/ David J. Berardinelli	
            David J. Berardinelli
            DeForest Koscelnik & Berardinelli
            436 Seventh Ave., 30th Fl.
            Pittsburgh, PA  15219
            Phone:  412-227-3100
            Fax:         412-227-3130
            Email:     berardinelli@deforestlawfirm.com
            *Counsel for Plaintiffs*