IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARMILLA TATEL, individually and as parent and natural guardian of her children; STACY DUNN, individually and as parent and natural guardian of her children; and GRETCHEN MELTON, individually and as parent and natural guardian of her children, <br><br> Plaintiffs, <br><br> v. <br><br> MT. LEBANON SCHOOL DISTRICT; THE MT. LEBANON SCHOOL BOARD; MEGAN WILLIAMS; DR. TIMOTHY STEINHAUER; DR. MARYBETH D. IRVIN; BRETT BIELEWICZ; JACOB W. WYLAND; VALERIE M. FLEISHER; TODD W. ELLWEIN; ANDREW D. FREEMAN; ERIN C. GENTZEL; CLAIRE B. GUTH; DR. JUSTIN D. HACKETT; ANNAMARIA A. JOHNSON; and SARAH L. OLBRICH, <br><br> Defendants. | Civil Action No.: 2:22-cv-837 <br><br> Judge Joy Flowers Conti |

## BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED.R.CIV.P. 12(B)(6) FILED BY THE MT. LEBANON SCHOOL DISTRICT

Defendant, the Mt. Lebanon School District ("District"), by and through its attorneys, Tucker Arensberg, P.C., submits this Brief in Support of Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state claims upon which relief may be granted.

I.   **Introduction and Summary of Argument**

Plaintiffs acknowledge that the Mt. Lebanon School District ("District") educates transgender students, including transgender first graders. (Complaint, ¶54). Nevertheless, Plaintiffs ask this Court to enjoin the Mt. Lebanon School District from providing any instruction to any grade on gender identity[1] because one of its teachers showed her first-grade class two age-appropriate books promoting acceptance of transgendered children on the nationally recognized Transgender Day of Visibility. (See Complaint, § VI (Requested Relief).[2]

Plaintiffs assert that these classroom readings violated their Constitutional rights, premised upon an alleged interference with the parental right to control the upbringing and education of their children. (Complaint, ¶¶ 11, 82-86, 101, 103). Plaintiffs' claims fail because federal courts have unanimously held that exposure to certain concepts or ideas at school without notice does not violate any Constitutional rights. **Plaintiffs have not cited, and Defendants have not located, one case that supports any of their claims for relief**. To the contrary, as discussed below, every federal court addressing these issues, including those related to LGBTQ+ [3] instruction in elementary schools, has held that parents have no Constitutional right to exempt their child from certain subjects, reading assignments, community-service requirements or assembly programs they find objectionable. Combs v. Homer-Ctr. Sch. Dist., 540 F.3d 231, 248, 248 n. 24 (3d Cir. 2008) ("The case law in this area establishes that parents simply do not have a constitutional right

---

[1] The Complaint alleges that the District allowed Williams to provide in-class instruction on "gender dysphoria and transgender transitioning," but does not provide any supporting facts to assert anything other than that the two books addressing tolerance of transgender status were read/shown to the class.

[2] If reading a book about not rejecting a transgender teddy bear constitutes instruction upon "gender dysphoria" and "transgender transitioning," anything involving gender identity and tolerance of transgender status falls under these categories.

[3] LGBTQ+ is an acronym commonly used to denote "lesbian, gay, bisexual, transgender and queer" persons with a "+" sign to recognize other manners of identifying sexual orientations and/or gender identities.

2

to control each and every aspect of their children's education and oust the state's authority over that subject.") (citing cases); see also Parker v. Hurley, 514 F.3d 87, 102 (1st Cir. 2008) (discussed below); Jones v. Boulder Valley Sch. Dist. RE-2, 2021 WL 5264188, at *15 (D. Colo. Oct. 4, 2021) (discussed below).[4]

The proper remedy is not to request this Court to create new law[5] or to become a super school board[6] to oversee or govern the curriculum and instruction of the District and other school districts within its jurisdiction. Instead, as noted by the Third Circuit, if their children are exposed to "sensitive" information at school, Plaintiffs are "free to discuss these matters and to place them in the family's moral or religious context, or to supplement the information with more appropriate materials." C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 185 (3d Cir. 2005).

## II. Standard of Review

A complaint which fails to state a claim upon which relief may be granted is properly dismissed. Fed.R.Civ.P. 12(b)(6). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. Connelly v. Lane Constr.

---

[4] Pennsylvania law does provide that parents can submit a written request for a religious exemption for specific instruction taught in schools. See 22 Pa.Code § 4.4(d)(3). However, Plaintiffs have not asserted in their Complaint that they submitted a written request for a religious exemption from instruction pursuant to this regulation.

[5] Proposed Pennsylvania legislation, Senate Bill 1278 of 2022, if passed, would prohibit classroom instruction on sexual orientation or gender identity in a pre-kindergarten program or in kindergarten through fifth grade (available: https://www.legis.state.pa.us/cfdocs/legis/PN/Public/btCheck.cfm?txtType=PDF&sessYr=2021&sessInd=0&billBody=S&billTyp=B&billNbr=1278&pn=1739). This demonstrates that, currently, classroom instruction on these topics is consistent with Pennsylvania law, and that this is a legislative (as opposed to a constitutional) issue.

[6] As the Supreme Court of Pennsylvania and federal courts have advised: "courts should not function as super school boards." T.W. by and through Waltman v. S. Columbia Area Sch. Dist., 4:20-CV-01688, 2020 WL 5751219, at *7 (M.D. Pa. Sept. 25, 2020) (quoting Zebra v. Sch. Dist. of City of Pittsburgh, 296 A.2d 748, 750-51 (Pa. 1972)).

3

Corp., 809 F.3d 780, 789 (3d Cir. 2016); Fiedler v. Stroudsburg Area Sch. Dist., 427 F. Supp. 3d 539, 548 (M.D. Pa. 2019).

Claims must be facially plausible, meaning they must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n. 27 (3d Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The facts provided must raise the expectation of relief above a purely speculative level, which includes more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Keener v. Hribal, 351 F. Supp. 3d 956, 964–65 (W.D. Pa. 2018).

Dismissal without leave to amend is justified on the grounds of futility, *i.e.*, an amendment would not serve any purpose. Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004); Crock v. Mt. Lebanon, 2010 WL 11693657, at *1 (W.D. Pa. Jan. 25, 2010).

### III. Argument

#### A. Introduction

The Complaint accuses the District of teaching first grade students lessons on "gender dysphoria" and "gender transitioning." It does not define these terms, uses them haphazardly, inconsistently, interchangeably and, ultimately, incorrectly. However, the Third Circuit accepted definitions for these and related terms in its opinion in the case Doe by and through Doe v. Boyertown Area Sch. Dist., 897 F.3d 518, 522–23 (3d Cir. 2018):

- "Gender" is a "broader societal construct" that encompasses how a "society defines what male or female is within a certain cultural context."

- A person's "gender identity" is their subjective, deep-core sense of self as being a particular gender.

- The term "transgender" refers to a person whose gender identity does not align with the sex that person was determined to have at birth.

4

- Transgender individuals may experience "gender dysphoria," which is characterized by significant and substantial distress as a result of their birth-determined sex being different from their gender identity.

- "Social gender transition" refers to steps that transgender individuals take to present themselves as being the gender they most strongly identify with. This typically includes adopting a different name that is consistent with that gender and using the corresponding pronoun set and wearing clothing and hairstyles typically associated with their gender identity.

Boyertown, 897 F.3d at 522–23.

The Third Circuit has recognized that transgender students are an at-risk segment of society and that policies of exclusion can lead to devastating results, including "anxiety and depression, low self-esteem, engaging in self-injurious behaviors, suicide, substance use, homelessness, and eating disorders among other adverse outcomes." Boyertown, 897 F.3d at 523. The Third Circuit, in Boyertown, also recognized that school districts have a compelling interest in protecting transgender students from discrimination and applauded that school district's attempts to create an environment of inclusivity, acceptance, and tolerance because such an environment benefits all students. Id., at 528–29. The District, therefore, has a compelling interest in promoting a welcoming environment for its transgender students.

### B. The Videos

Plaintiffs' claims arise from Williams having read two books to her first-grade class while corresponding YouTube videos played: (1) When Aiden (sic) Became a Brother and (2) Introducing Teddy. (Complaint, ¶ 84). The Complaint also alleges that "the clear and obvious subject matter of each of these books is gender dysphoria and transgender transitioning." (Complaint, ¶ 84).

However, a review of the videos demonstrates that the books address accepting others' gender identities and does not mention or instruct on ender dysphoria or gender transitioning.

5

In "When Aidan Became a Brother," a book about a young transgender boy, the parents state:

> When you were born, we didn't know you were going to be our son. We made some mistakes, but you helped us fix them. And you taught us how important it is to love someone for exactly who they are. This baby is so lucky to have you, and so are we.

As for "Introducing Teddy," a teddy bear named Thomas tells his human friend Errol that "I've always known that I'm a girl teddy, not a boy teddy. I wish my name was Tilly, not Thomas." To his relief, Errol responds: "Is that why you've been so sad? I don't care if you're a girl teddy or a boy teddy! What matters is that you are my friend." Contrary to Plaintiffs' characterizations, "When Aidan Became a Brother" and "Introducing Teddy" tell the story of accepting children for "exactly who they are."

### C. The Complaint should be Dismissed in its Entirety with Prejudice

In Counts I-V of the Complaint, Plaintiffs assert claims under § 1983 against the Defendants. 42 U.S.C. § 1983. To prevail on their claims, Plaintiffs must allege facts supporting an inference that "a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." Morrow v. Balaski, 719 F.3d 160, 165-66 (3d Cir. 2013). In evaluating a § 1983 claim, a court must first "identify the exact contours of the underlying right said to have been violated." Id. at 166 (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (*en banc*)). The court must then "determine whether the plaintiff has alleged a deprivation of a constitutional right at all." Id.

#### 1. Count I: Substantive Due Process - Parental Rights

In Count I, Plaintiffs assert that the Due Process Clause in the 14th Amendment protects the fundamental right of parents to direct the education, upbringing and the care, custody, and control of their children. Pierce v. Society of Sisters, 268 U.S. 510 (1925); Troxel v. Granville, 530 U.S. 57, 68 (2000). To state a due process claim under § 1983, the Plaintiffs must identify a

6

"recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and [show] that [they were] intentionally or recklessly deprived of that interest, even temporarily, under color of state law." Anspach ex rel. Anspach v. City of Philadelphia, Dept. of Pub. Health, 503 F.3d 256, 262 (3d Cir. 2007).

It is not disputed that the right to make child-rearing decisions is a recognized liberty interest under the Fourteenth Amendment. See Troxel, 530 U.S. at 65 (2000). While the "Supreme Court has never been called upon to define the precise boundaries of a parent's right to control a child's upbringing and education," it is clear that the right is neither absolute nor unqualified. C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 182 (3d Cir. 2005). The Third Circuit has explained that in these circumstances the parental right to control the upbringing of a child must give way to a school's ability to control curriculum and the school environment. Id.

Accordingly, Plaintiffs have no cognizable claim. See Id., at 182–83 (3d Cir. 2005) (citing Swanson v. Guthrie Independent Sch. Dist., 135 F.3d 694 (10th Cir.1998) (school policy against part-time attendance did not violate parent's right to direct upbringing of child); Herndon v. Chapel Hill–Carrboro City Bd. of Educ., 89 F.3d 174 (mandatory student participation in community service program did not violate parents' right to direct the upbringing of their child); Immediato v. Rye Neck Sch. Dist., 73 F.3d 454 (2d Cir.1996) (same); Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 533 (1st Cir.1995) (mandatory student attendance at sexually explicit AIDS awareness assembly "failed to demonstrate an intrusion of constitutional magnitude" on the right to direct the upbringing and control of child).

This conclusion is consistent with the decisions reached by other federal courts addressing instruction on LGTBQ+ matters in elementary schools. In Parker v. Hurley, 514 F.3d 87, 102 (1st Cir. 2008), **parents of elementary school children** asked the court to require that the school

district provide parents notice of the books and an exemption opportunity up to the seventh grade. The court "found no federal case under the Due Process Clause which has permitted parents to demand an exemption for their children from exposure to certain books used in public schools." Id., at 102–03. In Jones v. Boulder Valley Sch. Dist. RE-2, 2021 WL 5264188, at *15 (D. Colo. Oct. 4, 2021), parents complained that the school, without notice, was attempting to "indoctrinate" their children (**in kindergarten through fifth grade**) about LGBTQ-affirming and transgender-affirming principles, in conflict with the family's religious beliefs. The court denied the substantive due process claim, stating: "[d]ecisions as to what curriculum a public school decides to offer or require are uniquely committed to the discretion of local school authorities." Id.

Accordingly, as held by every court that has looked at this issue, Plaintiffs' substantive due process claims must fail and should be dismissed with prejudice.[7]

### 2. Count II - Procedural Due Process

#### a. Plaintiffs Have Not Identified a Protected Liberty Interest

Count II of the Complaint also asserts an alleged infringement of the fundamental right of parents to direct the education, upbringing and the care, custody, and control of their children without adequate procedural due process. (Complaint, ¶¶119, 163.d). To prevail on "a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's

---

[7] See C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 184 (3d Cir. 2005) (involuntary survey on sensitive subjects did not violate the Constitution because while "introducing a child to sensitive topics before a parent might have done so herself can complicate and even undermine parental authority, . . . . A parent whose middle or high school age child is exposed to sensitive topics or information in a survey remains free to discuss these matters and to place them in the family's moral or religious context, or to supplement the information with more appropriate materials."). Compare Gruenke v. Seip, 225 F.3d 290 (3d Cir. 2000) (the Third Circuit concluded that the parents of a public school student forced to take a commercial pregnancy test by her high school swim coach who later discussed the positive result with others (but notably not the student's parents), had stated a claim for violation of the familial right to privacy). As noted in the Complaint, Plaintiffs did have the opportunity to discuss the lesson with their children and place it in the proper context. (See Complaint, ¶ 92).

8

protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law." Hill, 455 F.3d at 234. "In evaluating a procedural due process claim, we first determine whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property." Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007).

As discussed with respect to Count I, classroom instruction does not implicate a protected liberty interest. Accordingly, the procedural due process claims with respect to parental rights in Count II should be dismissed with prejudice. See Doan v. Downingtown Area Sch. Dist., 2020 WL 4699046, at *13 (E.D. Pa. Aug. 13, 2020) ("Doan's allegations do not implicate a constitutionally protected liberty interest sufficient to support a procedural due process claim.").

### b. Plaintiffs' Have Not Exhausted Statutory Remedies

Count II also fails because Plaintiffs have failed to exhaust statutory remedies. As a matter of law, constitutionally adequate procedural due process exists when a state provides reasonable remedies to rectify an alleged legal error by a local administrative body. See MFS, Inc. v. DiLazaro, 771 F.Supp. 2d 382, 436 (E.D. Pa. 2011), aff'd, 476 Fed.Appx. 282 (3d Cir. 2012). When a state affords a mechanism with which to challenge an administrative decision, adequate procedural due process is provided, whether or not the plaintiff avails him/herself of the mechanism. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); Donovan v. Pittston Area Sch. Dist., 218 F. Supp. 3d 304, 314 (M.D. Pa. 2016), aff'd, 717 Fed. Appx. 121 (3d Cir. 2017) (demoted principal did not state a procedural due process claim when she failed to exercise her statutory right to appeal to the Pennsylvania Secretary of Education).

In the present case, School Board Policy IF provides that parents and guardians have the right to have their child(ren) excused from specific instruction which conflicts with their religious

beliefs, upon receipt by the school district of a written request from the parents or guardians. (Complaint, ¶ 38). This portion of the Policy is based on 22 Pa.Code. 4.4(d)(3). The Regulations also provide an administrative remedy if any parent, guardian or child believes that a school district is not complying with these requirements. Specifically, Section 4.81 of the regulations provides that the Pennsylvania Secretary of Education will receive complaints and investigate and remedy any wrongdoing committed by a school district upon receipt of any complaint. 22 Pa.Code. § 4.81.

Plaintiffs do not allege that they availed themselves of the opt-out process in School Board Policy IF and Section 4.4(d)(3) of the regulations and never challenged the District's actions through Section 4.81 of the regulations. Therefore, their procedural due process claim should be dismissed with prejudice for failure to exhaust available remedies.

### 3. Count III - Familial Privacy

In Count III, Plaintiffs allege that the School District Defendants have: 1) impermissibly inserted themselves into the private realm of Plaintiffs' families by usurping Plaintiffs' rights to make decisions regarding, *inter alia*, their children's upbringing and education; and 2) infringed Plaintiffs' right to family privacy by informing children that their parents can get it wrong when it comes to their gender. (Complaint, ¶ 129).

Plaintiffs' claims of parental autonomy and familial privacy both rely on the right to control the upbringing and education of their children. See Parker v. Hurley, 514 F.3d 87, 102 (1st Cir. 2008) (The due process right of parental autonomy has been considered a subset of a broader substantive due process right of familial privacy). Accordingly, Plaintiffs' familial privacy claims must fail for the same reason as Plaintiffs' substantive due process claims (Count I). Id., at 102–03 ("the substantive due process clause by itself, either in its parental control or its privacy focus,

does not give plaintiffs the degree of control over their children's education that their requested relief seeks"). Therefore, Count III should be dismissed with prejudice.

### 4. Count IV - Free Exercise of Religion

Count IV of the Complaint alleges that Plaintiffs have sincerely held religious and moral beliefs including: 1) human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity; and 2) parents have the non-delegable duty to direct the upbringing and beliefs and religious training of their children. (Complaint, ¶¶ 140, 141). The First Amendment prohibits the government from burdening the free exercise of religion. Anspach, 503 F.3d at 272. However, the First Amendment is only implicated if the governmental burden on religion is "substantial," *i.e.*, compulsory or coercive. Id. In other words, the Free Exercise Clause does not require "the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens." Id., at 272-273. Instead, governments may not "coerce individuals into acting contrary to their religious beliefs." Id.[8]

In the education context, legal challenges to instruction that is offensive to students or parents' religious beliefs are consistently rejected. See, e.g., Mozert v. Hawkins County Board of Education, 827 F.2d 1058, 1065 (6th Cir. 1987) (exposure to ideas through the required reading of books did not constitute a constitutionally significant burden on the plaintiffs' free exercise of religion); Coble v. Lake Norman Charter Sch. Inc., , 2021 WL 1685969, at *1 (W.D.N.C. Mar. 4, 2021) (a "coming of age" story where the protagonist writes several poems that disparage Christianity does not violate the Free Exercise Clause).

---

[8]  As noted recently by the United States Supreme Court, the Third Circuit does not recognize a hybrid-rights/strict scrutiny review of Free Exercise claims when combined with another alleged constitutional violation. See Fulton v. City of Philadelphia, Pennsylvania, 141 S. Ct. 1868, 1918 (2021) (Alito, J. concur.) (quoting Combs v. Homer-Center School Dist., 540 F.3d 231, 247 (3d. Cir. 2008) ("Until the Supreme Court provides direction, we believe the hybrid-rights theory to be dicta").

11

Such claims have also been rejected in the elementary school context when the topics involved LGBTQ+ issues. In Parker, the court rejected the parents' claims and the claims asserted on behalf of their children. Id., 514 F.3d at 105.[9] In rejecting the parents' claims, the court explained that a parent "remains free to discuss these matters and to place them in the family's moral or religious context, or to supplement the information with more appropriate materials." Id. (quoting C.N., 430 F.3d at 185). In rejecting the claims asserted on behalf of the elementary school children, the court bluntly stated: "there is no free exercise right to be free from any reference in public elementary schools to the existence of families in which the parents are of different gender combinations." Id., at 106.[10]  See also Jones v. Boulder Valley Sch. Dist. RE-2, 2021 WL 5264188, at *14 (D. Colo. Oct. 4, 2021).

In the present case, because the alleged conduct does not constitute indoctrination or coercion, the Free Exercise claim set forth in Count IV should be dismissed with prejudice.

### 5. Count IV - Equal Protection

Count IV of the Complaint also alleges that the reading of the children's books at issue violated the Equal Protection Clause of the Fourteenth Amendment. (Complaint, ¶¶ 139, 144). The Equal Protection Clause guarantees that "all persons similarly situated shall be treated alike." City of Cleburne, Tex. v. Cleburne Living Cntr., 473 U.S. 432, 439 (1985). In order to state an equal protection claim, a plaintiff must show that: (1) the complaining person, compared

---

[9] Unlike the Plaintiffs in this case, the parents in Parker did not seek to have certain subjects banned from the curriculum. Parker v. Hurley, 514 F.3d 87, 104, 104 n. 19 (1st Cir. 2008) (citing Williams v. Bd. of Educ., 388 F.Supp. 93 (D.W.Va.1975) (no violation of free exercise or privacy rights in school's use of textbooks that offend plaintiffs' religious beliefs)). The Parker court also noted that the parents in that case had no constitutional right to exemption from religiously offensive material. Id., at 104, 104 n. 20.

[10] In Parker, the court explained that there was no violation even though: 1) the teacher reads a book that endorses homosexuality and gay marriage and; 2) that the purpose of reading the book was to influence the children toward tolerance of gay marriage. Id., at 107. ("The reading by a teacher of one book, or even three, and even if to a young and impressionable child, does not constitute 'indoctrination.'").

12

with others similarly situated, was selectively treated; (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion; and (3) the defendant was motivated by an intent to punish or inhibit the exercise of the constitutional rights of a complaining party, or by a malicious or bad faith intent to injure the complaining party. Washington v. Aberegg, CIV.A. 07-215, 2007 WL 2692999, at *2 (W.D. Pa. Sept. 12, 2007).

Plaintiffs' claim fail because, with respect to instruction on gender identity, Plaintiffs do not allege that they were treated any differently than anyone else. In Jones v. Boulder Valley Sch. Dist. RE-2, , 2021 WL 5264188, at *17–18 (D. Colo. Oct. 4, 2021), the court aptly explained the weakness of such equal protection claims:

> Plaintiffs' claims about supposed discrimination makes little sense in terms of a denial of equal protection. . . . . *All* families were allegedly not being told about the details of the curriculum and no one is given the opt-out option.. . . . Plaintiffs cite no case that would recognize an equal protection claim under remotely similar circumstances.

Id. Because the Complaint alleges that no parents were told about this "offensive" instruction, the Equal Protection claims in Count IV should be dismissed with prejudice.

### 6. Count V: Children's Rights - Privacy

In Count V, the Complaint alleges that the District substituted its own judgment about when and how to teach about gender identity and violated Plaintiffs' children's rights to individual decision making related to, *inter alia*, their right to control their own education. (Complaint, ¶152). Plaintiffs have not cited to, and the District has not located, any cases establishing that minors have a right to control their instruction and, upon information and belief, no such right exists. To the contrary, as noted above, parents possess a qualified right to control their children's upbringing and education and those rights have not been violated in this case. C.N. v. Ridgewood Bd. of

Educ., 430 F.3d 159, 182 (3d Cir. 2005). Accordingly, Count V should be dismissed with prejudice.

### 7. The District Is Not Liable For Williams' Actions

The Complaint alleges that the District has an express and/or "de facto" policy of permitting instruction on gender identity purportedly in violation of Plaintiffs' Constitution rights because, after Williams read the children's books involving gender identity to her students, the District's Board of School Directors, Superintendent (Defendant, Dr. Timothy Steinhauer) and Assistant Superintendent (Defendant, Marybeth Irvin) did not expressly repudiate Williams' actions and, therefore, is liable for Williams' actions. (Complaint, ¶¶ 101-104, 107, 111-112, 120-121, 145).[11]

However, to establish § 1983 liability against the District, a plaintiff must show that the enforcement of a District policy was "the moving force" of the violation of plaintiff's federally protected rights. Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs cannot make such a showing. As a matter of law, the Superintendent and Board of Directors have final, policy making authority with respect to the curriculum. Smith v. Sch. Dist. of Darby Tp., 130 A.2d 661, 668 (Pa. 1957); 24 P.S. § 15-1512; see also Policy IF ("The Board of School Directors. . . is responsible . . . for the approval of curricula that have been recommended by the superintendent").[12] It is not sufficient to simply show that some other public officials generally agreed with an actor's conduct or expressed support for a state actor. Cope v. Brosius, 2018 WL 2091359, at *16 (M.D. Pa. Mar. 14, 2018), report and

---

[11] Inconsistent with this theory, the Complaint also alleges Williams' use of the instructional materials violated District policy. ((Complaint, ¶¶ 85, 87).

[12] "The Supreme Court has forbidden courts from "assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." Flood v. Sherk, 400 F. Supp. 3d 295, 309 (W.D. Pa. 2019); Santiago v. Warminster Twp., 629 F.3d 121, 135 n.11 (3d Cir. 2010).

14

recommendation adopted, 2018 WL 2086073 (M.D. Pa. May 4, 2018). Instead, it must be alleged that the final policy maker knew that the subordinate was violating someone's rights, but failed to stop it. Ditzler v. Hous. Auth. of City of Nanticoke, 171 F. Supp. 3d 363, 371 n. 4 (M.D. Pa. 2016). The Complaint does not make such allegations. Indeed, to the contrary, the Complaint contends that Williams' use of the instructional materials *violated* established District policy. (Complaint, ¶¶ 85 and 87). Consequently, all claims against the District should be dismissed with prejudice.

### IV.   Conclusion

The Complaint fails to state any cognizable claims against Defendant, Mt. Lebanon School District. The District respectfully requests that Plaintiffs' Complaint be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state claims for which relief may be granted.

Respectfully submitted,

TUCKER ARENSBERG, P.C.

/s/ *Christopher L. Voltz*
Christopher L. Voltz
PA I.D. #200704
cvoltz@tuckerlaw.com

Thomas P. Peterson
Pa. I.D. #32624
tpeterson@tuckerlaw.com

Matthew M. Hoffman
Pa. I.D. #43949
mhoffman@tuckerlaw.com

1500 One PPG Place
Pittsburgh, PA  15222
(412) 566-1212

Dated: July 27, 2022                                                 Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2022, I have filed electronically the foregoing Brief in Support of Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to the following attorney(s) of record addressed as follows:

>David J. Berardinelli, Esquire
>DEFOREST KOSCELNIK & BERARDINELLI
>436 Seventh Ave., 30th Fl.
>Pittsburgh, PA  15219
>Phone:  412-227-3100
>Fax:   412-227-3130
>Email:  berardinelli@deforestlawfirm.com

>Respectfully submitted,

>/s/ *Christopher L. Voltz*
>Christopher L. Voltz
>PA I.D. #200704
>cvoltz@tuckerlaw.com

>1500 One PPG Place
>Pittsburgh, PA  15222
>(412) 566-1212

>Attorneys for Defendants

TADMS:6065392-7 032545-194804