IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMILLA TATEL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No.: 2:22-cv-837 |
| v. | ) | |
| | ) | Judge Joy Flowers Conti |
| MT. LEBANON SCHOOL DISTRICT; et al, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE THE USE OF HEARSAY STATEMENTS AS EVIDENCE

Defendants, Mt. Lebanon School District, Megan Williams, Dr. Timothy Steinhauer, Dr. Marybeth Irvin, Brett Bielewicz and Jacob W. Wyland, by their attorneys, Tucker Arensberg, P.C., submit the following Reply Brief in Support of Motion *In Limine* to preclude the attempted introduction of certain hearsay statements as evidence at the trial of this matter or in support of or in opposition to any pre-trial motion.

## I.      Introduction

Defendants' Motion *in Limine* arises from the volitional decision of Plaintiffs not to have their children testify in this matter. In lieu of such direct testimony, Plaintiffs seek to proffer their own testimony as to what their children supposedly told them occurred in Defendant Megan Williams' classroom. By their Complaint, Plaintiffs accuse Defendant Williams of, *inter alia*, the following:

1. Early in the fall, [Williams] played a video of "*Jacob's New Dress*" to the class. (Doc. #1, ¶ 76).
2. On November 11, 2022 (Veteran's Day), Williams put her hands on her hips and sarcastically stated: "can you believe I forgot to say the pledge for fifty-two straight days?" (Doc. #1, ¶ 63).
3. Williams told Plaintiff Dunn's child that he "can wear a dress and have hair like [his] mom." (Doc. #1, ¶ 78).
4. Williams targeted Plaintiff Dunn's child for repeated approaches about gender dysphoria.  (Doc. #1, ¶ 79).
5. Williams had private conversations with Plaintiff Dunn's child, discussing with him the similarities between the boy and her transgender child again suggesting that the boy might want to wear a dress, at other times

   commenting to him how the boy and her transgender child had similar
   interest[s] and the same favorite color, and telling the child that he could be
   like her transgender child. (Doc. #1, ¶ 79).

6. Williams told Plaintiff Dunn's child that "she would never lie to him." (Doc.
   #1, ¶ 79).

7. Williams told Plaintiff Dunn's child not to tell his parents about these
   discussions and that if the subjects they were discussing came up at home,
   to say that "I heard it from a little birdie."  (Doc. #1, ¶ 79).

8. Williams "groomed" Plaintiff Dunn's child. (Doc. #1, ¶ 79).

These allegations derive solely from statements ostensibly made to Plaintiffs by their

children, are not corroborated by other admissible evidence and, as to those relating to the Pledge

of Allegiance and Plaintiff Dunn's child, involve *inferences* and assumptions. As for the testimony

regarding the instruction on March 31, 2022, Defendants acknowledge that two paraprofessionals

provided testimony like the proffered hearsay.  However, this testimony remains inadmissible.

Plaintiffs primarily argue that such hearsay testimony should be permitted for the truth of

the matter asserted under the residual exception of Rule 807 of the Federal Rules of Evidence,

which requires a determination of sufficient trustworthiness of the hearsay statements and the

necessity of their admission as evidence. None of the criteria established by Rule 807 are present.

Plaintiffs indisputably have an inherent bias in providing such self-serving testimony in support of

their claims which alone unfavorably bears upon the reliability of such testimony. As

"corroboration" for some of these statements, Plaintiffs proffer only the consistency of each other's

hearsay testimony. The admission of such hearsay is not warranted by necessity or the absence

of other more probative sources of evidence.

Plaintiffs' children are available to testify, but Plaintiffs seek to tell their children's purported

stories.  The children's participation as witnesses would not involve the same aggravating

circumstances and concerns as are present in the decisions presented in Plaintiffs' brief

concerning sexual abuse allegations. Further, adult paraprofessionals were present within

Williams' classroom throughout the school day and have been thoroughly cross-examined in

depositions. That these persons are school district employees does not render their testimony

less probative than Plaintiffs' proffered hearsay. Plaintiffs seek to invoke the residual exception of

Rule 807 merely out of convenience and for advantage rather than necessity and their attempt to use hearsay testimony to establish their salacious allegations should be rejected.

## II.   Argument

### A.   Introduction

Plaintiffs argue that their designated testimony should be admitted for the truth of the matter asserted (i.e., that Williams did or said what the children purportedly told their parents) pursuant to the residual exception found in Rule 807 or, in one instance, as an adoptive admission.  Alternatively, Plaintiffs argue that the testimony should be admitted, not for the truth of the matter asserted, but merely to provide context, its effect on the listener, or the state of mind of the children.  For the reasons set forth below, the Plaintiffs' testimony should not be permitted for any reason.

#### 1.   The Testimony Should Not Be Admitted for the Truth of the Matter Asserted.

##### a.   Rule 807 - The Residual Exception to the Rule Against Hearsay

###### i.   Introduction

Plaintiffs argue that the challenged testimony should be admitted under the residual exception set forth in Rule 807 of the Federal Rules of Evidence. Under Rule 807, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804, subject to the following conditions:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
>
> (2) it is more probative on the point for which it is offered than by any other evidence that the proponent can obtain through reasonable efforts.

Fed.R.Evid. 807(a); Pirl v. Ringling, 619 F. Supp. 3d 531, 538 (W.D. Pa. 2022).

Notwithstanding the 2019 amendments to Rule 807 and contrary to Plaintiffs' assertions, the Third Circuit and this Court caution that this "residual exception" should only be utilized in exceptional circumstances and "only when certain exceptional guarantees of trustworthiness exist

and when high degrees of probativeness and necessity are present." <u>United States v. Nucera</u>, 67 F.4th 146, 171 (3d Cir. 2023) (<u>quoting</u> <u>United States v. Bailey</u>, 581 F.2d 341, 347 (3d Cir. 1978)); <u>see</u> <u>also</u> <u>United States v. Nunez</u>, No. 2:19-CR-00381-MJH, 2021 U.S. Dist. LEXIS 72884, at *18-21 (W.D. Pa. Apr. 15, 2021) (same); <u>Walker v. Studlack</u>, No. 1:17-CV-2371, 2022 U.S. Dist. LEXIS 17257, at *8 (M.D. Pa. Jan. 31, 2022) (same). There is a heavy burden on the proponent of the statement, and invocation of the rule requires "some degree of rigor." <u>Shaffer v. Cranberry Twp.</u>, No. 2:19-CV-01481-CCW, 2022 U.S. Dist. LEXIS 106495, at *11 (W.D. Pa. June 15, 2022) (<u>quoting</u> <u>Trustees of the Univ. of Pa. v. Lexington Ins. Co</u>., 815 F.2d 890, 906 (3d Cir. 1987); <u>see</u> <u>also</u> <u>GCIU-Employer Ret. Fund v. Wilrick, LLC</u>, Civil Action No. 16-1074 (MAH), 2023 U.S. Dist. LEXIS 69955, at *16-17 (D.N.J. Apr. 21, 2023) ("Rule 807 imposes an onerous burden on the proponent to demonstrate that the statement is reliable, and is to be used only in 'rare situations'"). This case does not present such exceptional circumstances.

### ii.  Guarantees of Trustworthiness

In assessing the guarantees of trustworthiness, factors to consider include whether: (1) the declarant was known and named; (2) the statement was made under oath; (3) the declarant knew his assertions were subject to cross-examination; (4) the statement was based on personal knowledge; (5) the declarant had motivation to lie/had a financial interest in the litigation's outcome; (6) the statement was corroborated; and (7) the declarant was qualified to make the assertion.  <u>Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.</u>, 247 F.3d 79, 113 (3d Cir. 2001); <u>United States v. Wilson</u>, 281 F. App'x 96, 99 (3d Cir. 2008).

This Court has held that statements that were not made under oath, not subject to cross-examination and made several hours after the event lack sufficient guarantees of trustworthiness and are not admissible under Rule 807.  <u>See</u> <u>Prescott v. R&L Transfer, Inc.</u>, 111 F. Supp. 3d 650, 657 (W.D. Pa. 2015) ("the critical issue here is that Mead's statements were not made under oath nor were they subject to any cross-examination. Mead's statements to Thomas took place several hours after the accident, and thus Mead had opportunity to reflect on what had happened . . . .");

United States v. Seals, 566 F. App'x 121, 122 (3d Cir. 2014) ("Gibbons' statement lacked any degree of trustworthiness because of its surrounding circumstances. He was not under oath nor subject to cross-examination. It was rather a voluntary statement made soon after the shooting.").

In addition, in the Third Circuit, consideration should be given to factors bearing on the reliability of the reporting of the hearsay by the witness, *i.e.*, Plaintiffs.  United States v. Bailey, 581 F.2d 341, 349 (3d Cir. 1978); 5 Weinstein's Federal Evidence § 807.03 ("However, at least one circuit—the Third—does consider 'the reliability of the reporting of the hearsay by the witness,' in addition to the circumstantial guarantees of trustworthiness of the declarant's original statements, in determining whether testimony may be admitted under Rule 807").  In other words, because Plaintiffs have an interest in the outcome of this litigation and are aided by the hearsay statements, the statements are inherently untrustworthy.   For example, in Pecorella-Fabrizio v. Boheim, No. 3:08-cv-00348, 2011 U.S. Dist. LEXIS 134440, at *15 (M.D. Pa. Nov. 16, 2011), the court, relying on Bailey, rejected the hearsay testimony of an interested party when it was the only probative evidence on point:

> Ms. Pecorella-Fabrizio, who testified at her deposition that Ms. Williams made this statement, has an inherent bias in favor of admitting the statement, especially considering that it "is the only probative evidence" on this point. (Doc. No. 106 at 19.) Despite arguing that the admission of the statement is proper because Defendants may be able to rebut the statement through the testimony of other witnesses, Plaintiffs have failed to present evidence that any individual besides Ms. Williams witnessed anything of relevance on January 3, 2008. (Id. at 18.) Given the inherent bias of Ms. Pecorella-Fabrizio and the lack of any corroborating evidence, the reporting of the hearsay statement by Ms. Pecorella-Fabrizio is not reliable.

Id.  This Court, also relying on Bailey, similarly held that when the reporting party has an interest in the outcome of litigation or is biased towards the person benefitted by the hearsay statements, their testimony is not reliable:

> Mrs. Urban, who is proffered to testify, is Marilyn Manfredi's mother and Samuel Manfredi's mother-in-law and has an inherent bias in favor of them, especially considering that the Manfredi's face potential criminal liability in this case. Moreover, there is no corroborating evidence of the statement because the only other person (outside of Mrs. Urban) present for the alleged conversation, Mr. Urban, is now deceased. The statement was purportedly made 18 years ago, and

it is axiomatic that over time witnesses' memories fade, undermining the reliability of testimony. Given the inherent bias of Mrs. Urban, the lack of corroborating evidence and the age of the alleged statement, the reporting of the hearsay statement by Mrs. Urban is not reliable.

United States v. Manfredi, No. 07-352, 2009 U.S. Dist. LEXIS 106115, at *8-9 (W.D. Pa. Nov. 13, 2009).

As for corroborating evidence, Plaintiffs argue that some of the children's statements are corroborated by the hearsay statements of other children.  However, courts must consider not only the existence of corroborating evidence but also the strength and quality of that evidence. Fed.R.Evid. 807, Notes of Advisory Committee on 2019 amendments; 5 Weinstein's Federal Evidence § 807.03.  Hearsay statements, however, are "inherently untrustworthy" and possess limited, if any strength or quality as evidence, Ezeagwuna v. Ashcroft, 525 F.3d 396, 406 (3d Cir. 2003), and, therefore, should not qualify as corroborating evidence.

The decision in Brookover v. Mary Hitchcock Mem'l Hosp., 893 F.2d 411, 420 (1st Cir. 1990), cited by Plaintiffs, does not help Plaintiffs' arguments for admission.  In that case, the First Circuit found that the trial court's decision to allow a mother to testify about what her 36-year old son told her about how the hospital did not timely respond to his requests to use the bathroom was not a clear error of judgment. The trial court found that the adult son's testimony would be the most probative on what happened in the room, but noted that the son was unavailable as a witness.  Id. Most importantly, the mother's statements were corroborated by the notes of one of the hospital's nurses made shortly after the accident.  Id., at 420-21.[1]  In the present case, the Plaintiffs' children are available as witnesses and most of the challenged statements are not corroborated by admissible evidence.

---

[1] Even with this "almost irrefutable" corroborating evidence, the court acknowledged that the dissent made "a logical and compelling argument" that the mother's statements should not have been admitted under the residual hearsay exception.  Id., at 421.  In fact, the court explicitly stated if the hospital was not clearly negligent for failing to restrain Ronald, it may not have allowed the mother's hearsay testimony about the hospital's failure to timely respond.  However, given the circumstances, it would be unfair "to penalize the plaintiffs in this case because the district court may have erred in admitting evidence on a subsidiary issue."  Id.

6

### iii. More Probative for a Point for Which it is Offered that Can Reasonably Be Obtained Through Reasonable Efforts of Proponent.

Plaintiffs' children are available for testimony, but Plaintiffs seek to tell their version of their children's stories. The Third Circuit and this Court have held that Rule 807 does not apply when the declarants are available to testify. United States v. Nucera, 67 F.4th 146, 171 (3d Cir. 2023) ("Stroye was available to testify, and his in-court testimony about who assaulted him would have been more probative on that point than the hearsay statement would have been. Accordingly, Stroye's statement was not admissible under Rule 807"); Pirl v. Ringling, 619 F. Supp. 3d 531, 539 (W.D. Pa. 2022) ("Defendants have already indicated that Cruz and Johnson are available to testify and have included them on their witness list. Given that the Defendants can obtain direct testimony from both Cruz and Johnson at trial if needed, the hearsay statements contained in the Turner Report are not admissible under the residual exception to the rule against hearsay.").

This position is consistent with the holdings of other federal courts. See e.g., Sanchez v. Fla. Dep't of Corr., No. 4:20-cv-360-AW-MJF, 2020 U.S. Dist. LEXIS 260087, at *9 (N.D. Fla. Nov. 24, 2020) ("Nor has Sanchez shown that the same or similar testimony cannot be "obtained through reasonable efforts." Id. He has suggested that some witnesses now live out of state, . . . but he has not suggested, much less shown, that the witnesses could not be subpoenaed for deposition or live testimony in this case."); Conning v. Halpern, Civil Action No. 18-cv-12336-ADB, 2021 U.S. Dist. LEXIS 120151, 2021 WL 2646672, at *3 (D. Mass. June 28, 2021) (finding that an e-mail was not admissible under Rule 807 where the email was not more probative than other evidence that plaintiff could have obtained through reasonable efforts, as, *inter alia*, the plaintiff failed to explain whether he sought one declarants voluntary testimony or why he elected not to depose him); Sysmex Corp. v. Beckman Coulter, Inc., No. 19-1642-JFB-CJB, 2022 U.S. Dist. LEXIS 107164, at *3-4 (D. Del. June 2, 2022) ("Defendant has made no showing or provided no argument as to why reasonable efforts could not have resulted in testimony by Mr. Kalkman or Goffin Meyvis employees about the substance of these documents."). See also 5 Weinstein's

Federal Evidence § 807.03 ("The fact that a declarant is available to testify usually minimizes the need to admit the hearsay").

In addition, in "determining the admissibility of hearsay under the residual exception, the trial court also will consider the extent of the defendant's role, if any, in making the witness unavailable." 5 Weinstein's Federal Evidence § 807.03. In the present case, the children's testimony is the most probative evidence as to what actually happened and there is not evidence that they are unable or unwilling to testify. Instead, Plaintiffs have made their children unavailable, which must preclude a finding of admissibility under Rule 807.

### iv.  Child Sexual Abuse Cases

Defendants acknowledge that courts have created special rules for admitting the hearsay testimony of sexually abused children. Specifically, in Idaho v. Wright, 497 U.S. 805, 821-22, 110 S. Ct. 3139, 3150 (1990), the Supreme Court stated:

> The state and federal courts have identified a number of factors that we think properly relate to whether hearsay statements made by a child witness in child sexual abuse cases are reliable. See, e. g., State v. Robinson, 153 Ariz. 191, 201, 735 P.2d 801, 811 (1987) (spontaneity and consistent repetition); Morgan v. Foretich, 846 F.2d 941, 948 (CA4 1988) (mental state of the declarant); State v. Sorenson, 143 Wis. 2d 226, 246, 421 N.W.2d 77, 85 (1988) (use of terminology unexpected of a child of similar age); State v. Kuone, 243 Kan. 218, 221-222, 757 P.2d 289, 292-293 (1988) (lack of motive to fabricate). Although these cases (which we cite for the factors they discuss and not necessarily to approve the results that they reach) involve the application of various hearsay exceptions to statements of child declarants, we think the factors identified also apply to whether such statements bear "particularized guarantees of trustworthiness" under the Confrontation Clause. These factors are, of course, not exclusive, and courts have considerable leeway in their consideration of appropriate factors. We therefore decline to endorse a mechanical test for determining "particularized guarantees of trustworthiness" under the Clause. Rather, the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.

Id. Doe v. United States, 976 F.2d 1071, 1075 (7th Cir. 1992), quoting Nelson v. Farrey, 874 F.2d 1222, 1224 (7th Cir. 1989) ("prosecutions based on sexual abuse allegations 'place a strain of traditional notions of procedural justice'"). Such cases are distinguishable because this matter is a civil action that does not involve any form of sexual abuse.

Moreover, in many of those cases, hearsay testimony was accepted where the children themselves previously testified and were subject to cross-examination. In both Virgin Islands v. Morris, 191 F.R.D. 82, 87 (D.V.I. 1999), and United States v. Farley, 992 F.2d 1122 (10th Cir. 1993), cited by Plaintiffs, the sexually abused child testified under oath.   In United States v. Frazier, 678 F. Supp. 499, 503-04 (E.D. Pa. 1986), also cited by Plaintiffs, the minor testified at trial and "was questioned at length about her prior statements."  The Frazier court, in deciding to admit prior hearsay statements made by the child sexual abuse victim, cited to an Eight Circuit case United States v. Renville, 779 F.2d 430 (8th Cir. 1985) (sex abuse of an 11 year old), stating:

> In Renville, the most important criterion of trustworthiness was that declarant testified at trial and was subject to cross-examination. "Where the jury is thus provided with the declarant's in-court testimony and explanation for prior inconsistent statements, the concern with circumstantial guarantees of reliability is lessened." Renville, 779 F.2d at 440

Frazier, 678 F. Supp. at 504 (emphasis added).

The requirement that prior hearsay statements are only trustworthy to bolster in-person testimony is consistent with the holdings in other Circuits.  In United States v. Harrison, 296 F.3d 994 (10th Cir. 2002), the court allowed prior hearsay statements because the child victim recanted her earlier statements and testified for the defense. Id. at 1000.   In United States v. Peneaux, 432 F.3d 882, 893 (8th Cir. 2005), the Eighth Circuit stated that where the child's testimony is "inconsistent" or "unclear," the child's prior statements may be admitted under Rule 807.   Here, Plaintiffs have elected not to have their children provide any form of testimony under oath. Accordingly, the child sexual abuse cases are not applicable to this matter.

In child sexual abuse cases, some courts have held that Rule 807 can apply when a child is unable or unwilling to testify under narrow circumstances.  For example, in United States v. White Bull, 646 F.3d 1082, 1094 (8th Cir. 2011), the Eighth Circuit accepted hearsay testimony to supplement a child's earlier testimony where the child was unable to testify to dates of abusive acts which were a material issue. In contrast, in United States v. Balfany, 965 F.2d 575 (8th Cir. 1992), the Eighth Circuit concluded the testimony of a child victim's aunt regarding the victim's

out-of-court statements was inadmissible under the residual hearsay exception because it was not demonstrated to be the most probative evidence available.  The court explained that the aunt's testimony was not "information of a kind or to a degree that [the child's] live testimony or the testimony of the other hearsay witnesses could not" provide. Id. at 582. It noted "the district court could have (and probably should have) required the prosecution to establish that such information was unavailable from any other witness before permitting [the aunt] to testify." Id. Accordingly, the court held the aunt's testimony was not the most probative evidence and refused her hearsay testimony. Id. at 581-82.

No such exceptional circumstances exist here because the lack of child testimony is due to *Plaintiffs having elected not to have their children testify* without making any showing that their children are unable or unwilling to do so.[2]

### b.  Adoptive Admissions

Plaintiff Dunn seek to testify about a September 2021 conversation with Williams in which Dunn contends that her son was told by Williams that he could have long hair and wear dresses like his mom. Plaintiffs argue that Williams did not deny the accusations and that her "silence" should be deemed an admission under Rule 801(d)(2)(B).  Under this Rule, a statement is not hearsay if "the statement is offered against a party and is . . . a statement of which the party has manifested an adoption or belief in its truth." Under the Rule, "[a]doption or acquiescence may be manifested in any appropriate manner. When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue." United

---

[2] Several states have adopted residual exceptions to permit the admission of statements made by sexually abused children, but none of them would permit Plaintiffs' designated testimony in this case. In the statutes reviewed by Defendants, including Pennsylvania, the child must testify or be unable or unwilling to do so before the out-of-court statements can be used as evidence. 42 Pa.C.S. 5985.1.  See also AL Code § 15-25-32; AK Stat § 12.40.110; GA Code § 24-8-820(a); Ohio R. Evid. 807(B); Conn. R. Evid. 8-10; KAN. STAT. ANN. § 60-460(dd); KY. R. EVID. 804A; N.J. R. EVID. 803(c)(27); S.C. CODE ANN. § 17-23-175; TENN. R. EVID. 803(25); TEX. CODE CRIM. PROC. ANN. art. 38.072.  This restriction does not apply in Michigan, but that exception only applies to criminal or delinquent proceedings.  MICH. R. EVID. 803A.  Tennessee contains similar language to Michigan.  TENN. R. EVID. 803(25).

States v. Lafferty, 503 F.3d 293, 306 (3d Cir. 2007) (quoting Fed. R. Evid. 801 advisory committee notes). Whether a statement is admissible as an adoptive admission turns on: (1) whether the statement was such that, under the circumstances, an innocent person would deny the statements; and (2) whether there are sufficient foundational facts from which the jury may infer that the defendant heard, understood, and acquiesced in the statement. Lafferty, 503 F.3d at 306.

The circumstances from which adoptive admissions were found in the decisions cited by Plaintiffs' brief starkly contrast with those here. In United States v. Jinadu, 98 F.3d 239, 244 (6th Cir. 1996), the defendant is alleged to have responded to incriminating questions by nodding his head "yes." Similarly, in United States v. Robinson, 275 F.3d 371, 382 (4th Cir. 2001), the court admitted testimony regarding a defendant's verbal description of a murder. Specifically, the witness testified that although she was not looking at defendants as they described the murder and could not identify which defendant made any given statement, she could discern two separate voices and knew that they were jointly describing the crime. Further, the witness testified that at no point did either individual contradict or deny the other's portion of the account. Id. In United States v. Wiseman, 814 F.2d 826, 828-29 (1st Cir. 1987), the testimony from a co-defendant was that he introduced defendant "Mac" to another individual saying, "This is "Mac" who just came up from the City to help distribute the junk." He then testified that defendant "Mac" responded to the introduction and nodded affirmatively, which was interpreted as a silent acknowledgement of the introduction rather than a dispute of the substance of the introduction. The court concluded that the defendant heard the introduction, that the defendant understood "junk" to mean heroin or some illegal drug, and the defendant acquiesced in the introduction and assented to the characterization of the purpose of his presence. Further, the court concluded that under these circumstances it would have been natural for an innocent person to object to the characterization of why he was there and that the defendant failed to do so. In United States v. Giese, 597 F.2d 1170, 1195 (9th Cir. 1979), the witness testified that prior to appellant's indictment, she, the defendant and an attorney for an unindicted co-conspirator, met in attorney's office. She

recounted that the attorney said that the defendant was "the leader and the planner of all of the illegal activities"; that he knew the defendant participated in a break-in of a home and was the driver of "the get-away car" used in another incident. The defendant "just nodded and smiled" in response to these accusations. The Court concluded that the evidence was strong enough to support a reasonable inference that the defendant admitted his guilt by nodding and smiling in response to the attorney's statements.  Id., at 1196.

Unlike the circumstances in these decisions, as described in more detail below, Dunn's testimony concerning the September 2021 conversation with Williams does not include any such manner of affirmation or implicit acceptance of the accusation by Williams. To the contrary, according to Dunn, Williams expressly denied the allegations.

### c.  The Testimony identified by Plaintiffs Should Not be a Admitted for the Truth of the Matter Asserted

#### i.  The Statements about the Book *Jacob's New Dress* are Not Admissible under Rule 807

Plaintiffs allege that early in the fall of the 2021-2022 school year, Williams played a video of *Jacob's New Dress* to the class (Doc. #1, ¶ 76).  To support this allegation, Plaintiffs rely exclusively on statements minor children made to their parents.  (See Doc. #63-1, Ex. A, p. 41; Ex. C, p. 94; Ex. B, p. at 28).  Tatel testified that her daughter told her that Ms. Williams played *Jacob's New Dress* on the same day after school.  Tatel testified that she routinely questioned what books she read in school and would then look them up if they did not sound familiar.  Tatel did not testify that her daughter was in any way stressed about the book being read.  (Doc. #63-1, Ex. A, p. 41:1-42:2).  Similarly, non-party L.R. testified that her daughter told her that Ms. Williams' played the book to the class, but provided no surrounding details.  (Doc. #63-1, Ex. C, p. 94:5-94:14).  Finally, Plaintiff Dunn, after presenting a YouTube video of the book to her son in April 2023, testified that he stated that Williams had played the book to the class.  (Doc. #63-1, Ex. B, p. 28:8-28:20).  Williams denies ever using the book *Jacob's New Dress* in her first grade

class. (Doc. 69-14, Ex. N., p. 70:5:7).   Plaintiffs have not identified any other corroborating evidence that Williams ever read *Jacob's New Dress* to the class. (Doc. 69, pp. 9-10, 26).

Plaintiffs argue that this testimony is admissible under Rule 807 because: 1) the statements were the result of a routine, daily inquiry each made with their daughter; 2) this is not something the children would be expected to lie about; 3) the statements are corroborated by the similar hearsay statements.   (Doc. # 69, pp. 25-26). However, Plaintiffs ignore the fact that the reliability of their hearsay testimony is adversely affected by their financial interest in the outcome of this litigation. United States v. Bailey, 581 F.2d 341, 349 (3d Cir. 1978); 5 Weinstein's Federal Evidence § 807.03. Further, unreliable hearsay statements are inadequate to corroborate other unreliable hearsay statements.  F.R.E. 807, Notes of Advisory Committee on 2019 amendments ("the court must consider not only the existence of corroborating evidence but also the strength and quality of that evidence"); 5 Weinstein's Federal Evidence § 807.03. Consequently, such proffered testimony does not have sufficient assurances of trustworthiness to overcome the prevailing principle that "[h]earsay is generally inadmissible because the statement is inherently untrustworthy: the declarant may not have been under oath at the time of the statement, his or her credibility cannot be evaluated at trial, and he or she cannot be cross-examined." United States v. Reilly, 33 F.3d 1396, 1409 (3d Cir. 1994).

Such hearsay testimony also fails to meet the second requirement of Rule 807 that such evidence be more probative than any other evidence that could be obtained through reasonable efforts. Plaintiffs argue, without citation any authority, that the proposed testimony satisfies Rule 807's probative requirement because the parents have a clear recollection of the discussions with their children and their testimony is more reliable than "the unnecessary and (potentially traumatizing)" testimony of their children.   (Doc. # 69, p. 24).  First, it is common for children to testify when they are parties or witnesses to a lawsuit.  See e.g., Minor v. Indep. Sch. Dist. 112, No. 19-2414 (MJD/BRT), 2021 U.S. Dist. LEXIS 256325, at *13 (D. Minn. Jan. 8, 2021) ("The Court has located no precedent for preventing a deposition of a child Plaintiff in these

circumstances, and Plaintiffs have pointed to none either."); <u>Halley v. State of Okla</u>., No. 14-CV-562-JHP, 2016 U.S. Dist. LEXIS 127186, 2016 WL 4995393, at *2 (E.D. Okla. Sept. 19, 2016) (finding plaintiff's arguments in favor of preventing the deposition "speculative and unsupported," and finding plaintiff had not "demonstrate[d] 'extraordinary circumstances' that would warrant preventing the deposition").   Second, there are no circumstances to suggest that it would be traumatizing for the children to testify.   To the contrary, Plaintiffs children are available and are not testifying at the choice of the Plaintiffs.   <u>See also</u> <u>5 Weinstein's Federal Evidence § 807.03</u> ("The fact that a declarant is available to testify usually minimizes the need to admit the hearsay"). To the extent their parents are making them unavailable, that must factor against admissibility. <u>Id</u>. (in "determining the admissibility of hearsay under the residual exception, the trial court also will consider the extent of the defendant's role, if any, in making the witness unavailable"). Further, there are other witnesses who were present in Williams' classroom - paraprofessionals Sharon Boss, Lisa Mathewson and Jackie Girman - who are capable of providing testimony on whether or not the book was read to the class. That such persons are employees of the School District does not render their testimony less probative than the hearsay proposed by Plaintiffs. Accordingly, these statements should not be admitted under Rule 807.

### ii. Statements About William's Child Wearing Dresses and Sometimes Children Are Mean to Her Child are Not Admissible Under Rule 807

Plaintiff Tatel testified at her deposition that her child told her, at some point around the time Williams purportedly read *Jacobs New Dress*, that Williams told her class that: "her son wears dresses sometimes and kids are mean to him on the playground and that makes him feel sad." (Doc. #63-1, Ex. A, pp. 41:19-42:8).   L.R. similarly testified that her daughter told her, at some point, that Williams talked about how "her son sometimes likes to wear dresses to school" and that kids did not treat her child nicely. (Doc. #63-1, Ex. C, p. 94:5-17; Ex. D, pp. 32:16-33:20). However, Plaintiffs have not cited to any admissible corroborating evidence on this issue.  (Doc. 69, pp. 9-10, 26-27).

Plaintiffs argue, without citing to any authority, that because Defendants have not challenged the portions of the parents' testimony that their children told them Williams told the class that her child dressed up as Elsa for Halloween (which Williams acknowledges, <u>see</u> Doc. 69-14, Ex. N., pp. 69:18-70:4), they cannot challenge these statements about Williams purportedly telling the class that sometimes her child wears dresses to school, that kids are mean to him and that this makes her child sad." (Doc. # 69, p. 25).  First, Williams' sharing with her class what her child wore for Halloween is materially different that telling her class that her child wears dresses and that kids are mean to her child. Second, this testimony does not meet the criteria for admission under Rule 807.  For the reasons set forth above (not under oath, not subject to cross examination, made hours after the incident, having an interest in the outcome of the litigation), these statements are not trustworthy.  Additionally, the testimony of Plaintiffs' children (or the adult paraprofessionals in the classroom) is much more probative that the parents' hearsay testimony, but Plaintiffs have chosen not to have their children testify.

### iii. Testimony that Williams "Sarcastically" stated "Can You believe I forget to say the pledge for fifty-two straight days" is Not Admissible Under Rule 807

Plaintiffs are correct that Ms. Williams' class did not say the Pledge of Allegiance during the 2021-22 school year before Veterans' Day on November 11, 2021.  (**Exhibit C**, pp. 71:14-72:11). [3]  However, Plaintiffs seek to introduce evidence that, on Veterans' Day, Williams put her hands on her hips and <u>sarcastically</u> stated: "can you believe I forgot to say the pledge for fifty-two straight days?" (Doc. 1, ¶ 63; Doc. 69, p. 29).  This allegation is exclusively based on what Plaintiff Tatel and non-parties L.R. and M.R. were purportedly told by their children.  (Doc. #63-1, Ex. E, p. 55:1-17; Ex. F, p. 79:1-81:12; Ex. G, pp. 29:18-30:15).[4] The parents, and their counsel, are

---

[3] Pages 75 to 81 of Megan Williams Deposition Testimony are attached hereto as **Exhibit C**.  The names of children and portions of testimony irrelevant to the issues currently before the Court have been redacted.
[4] M.G.'s testimony should also be excluded because it constitutes double-hearsay.  Doc. #63-1, Ex. G, pp. 29:18-30:15.

assuming that Williams made this statement sarcastically. (Doc. 69, pp. 9-10, 29).  Williams denies that her failure to say the Pledge was anything but an oversight and Plaintiffs have not offered any other admissible evidence corroborating their allegations.  (Id.; Doc. 69-14, Ex. N., p. 72:5-11).

Plaintiffs proffered hearsay testimony should not be admitted under Rule 807.  For the reasons set forth above (not under oath, not subject to cross examination, made hours after the incident, having an interest in the outcome of the litigation), these statements are not trustworthy. In addition, the children's testimony is much more probative that what the parents have to say, but Plaintiffs have made a choice for their children not to testify.

Plaintiffs also argue that the statements should be admissible under Rule 807 because they are a near miss to Rule 803(1), the present sense impression exception to the rule against hearsay.  Fed. R. Evid. 803(1). Among the requirements for admission under Rule 803(1) is that the declaration must be an explanation or description of the event rather than a narration and the declaration and the event described must be contemporaneous. However, these proffered statements by the children provide a narration, rather than a description of the event and were made hours after the event and, crucially, was not made while the declarant was perceiving the threat or condition or immediately thereafter. Id.; United States v. Mitchell, 145 F.3d 572, 576 (3d Cir.1998). Accordingly, all of Plaintiffs' arguments for admission under Rule 807 fail.

### iv. Statements Attributed to Dunn's Child during the Conversation between Williams and Dunn in September 2021 are Not Admissible for the Truth of the Matter Asserted

Plaintiffs seek to introduce testimony from Plaintiff Dunn that Williams told her child that: 1) he could wear his hair long like his mom; and 2) he could wear dresses and dress like a fairy for Halloween.  (Doc. 63-1, Ex. H, pp. 10:18-12:6). Dunn asserts that she received this information from her son.  (Doc. 63-1, Ex. H, pp. 12:22-13:15).  Williams denied having these conversations with Dunn's child. (Doc. 69-14, Ex. N, pp. 76:10-16; **Exhibit C**, p. 79:5-18). Dunn also asserts that she confronted Williams about this during a parent/teacher conference on September 21,

2021.  (Doc. 63-1, Ex. H, p. 11:4-9).  Williams denies that this conversation occurred, and Plaintiffs have not cited to any admissible, non-speculative corroborating evidence that such a conversation ever occurred.  (Doc. 69, pp. 29-33; Doc. 69-14, Ex. N, pp. 75:20-76:9).

Plaintiffs first argue that these statements should be admissible because they are necessary to lay a foundation for showing William's failure to deny them. (Doc. #69, p. 30; <u>citing Giese</u>, 597 F.2d 1195).  <u>The problem with this argument is that Williams denied these claims</u>. First, Dunn testified as follows: "So I brought that to her attention during our phone interview - parent/teacher conference.  Nor did she deny it.  She just stated that <u>they were having a class discussion and maybe he heard wrong</u>." (Doc. 63-1, Ex. H, p. 11:4-9).  Stating that "he heard wrong" is clearly a denial.  William's denial is also documented in Dunn's note, where Dunn purportedly wrote:

> Had a brief discussion about my concerns about a comment suggested towards [Dunn's Child] regarding wearing a dress for Halloween. **Williams stated that the class was sharing costume ideas and said he must have gotten information mixed up**. . . .

(Doc. 63-1, Ex. M).  This Court should not submit the evidence of an admission by silence to the jury unless it first finds that sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant did actually hear, understand and accede to the statement.  <u>United States v. Sears</u>, 663 F.2d 896, 904 (9th Cir. 1981).  In this case, the facts are clear that Williams heard and understood Dunn's allegations and expressly denied that she told Dunn's son that he could wear dresses, dress like a fairy for Halloween, and/or have hair like his mom.

Plaintiffs argue that these statements are admissible under Rule 807 because they are supported by sufficient guarantees of trustworthiness, but ignore Dunn's own bias and financial interest in the litigation. Plaintiffs argue that the statements are corroborated by Dunn's handwritten note but fail to recognize that the note likewise is inadmissible hearsay. (Doc. # 69, pp. 31-32).  The note does not fall within Rule 803(5) (recorded recollection) because Dunn, as

set forth above, is able to testify and has testified as to her conversation with Williams in September 2021. Further, as discussed above, hearsay statements that are only corroborated by hearsay are not truly corroborated. As for the remaining examples (i.e., that Dunn's son knew the name of William's child, that Williams told the class that her child dressed as Elsa for Halloween, that William's liked Dunn's child, and that Dunn's child purportedly shouted "I'm a boy" in March 2022) does not, in any relevant way, corroborate the private conversation between Dunn and Williams beyond speculation and conjecture.

### v. Testimony Regarding Williams Allegedly Targeting and Grooming of Dunn's Son are Not Admissible for the Truth of the Matter Asserted

Plaintiffs allege that Williams targeted and groomed Dunn's child and told him to lie about their conversations. Specifically, Plaintiffs allege:

1. Williams targeted Plaintiff Dunn's child for repeated approaches about gender dysphoria.
2. Williams had private conversations with Plaintiff Dunn's child, discussing with him the similarities between the boy and her transgender child again suggesting that the boy might want to wear a dress, at other times commenting to him how the boy and her transgender child had similar interest[s] and the same favorite color, and telling the child that he could be like her transgender child.
3. Williams told Plaintiff Dunn's child that "she would never lie to him."
4. Williams told Plaintiff Dunn's child not to tell his parents about these discussions and that if the subjects were discussing came up at home, to say that "I heard it from a little birdie."
5. Williams "groomed" Plaintiff Dunn's child.

(Doc. #1, ¶ 79). Williams denied ever telling Dunn's child that it would be okay for him to wear a dress. (Doc. 69-14, Ex. N, pp. 76:14-16; **Exhibit C**, 79:5-18). Williams also testified that she did not recall talking with Dunn's child about him and her child having similar interests. (**Exhibit C**, pp. 78:25-79:4).

In support of the allegations that Williams told Dunn's child that he and her child had similar interests, the same favorite color and that he could be like her transgender child, Dunn alleges that Williams "made a lot of similes (sic) as far as things that" Williams child and Dunn's child could like, including sharing a favorite color (though Dunn could not remember which favorite

color both children share) and that they both liked action figures (but different types of action figures).  (Doc. 63-1, Ex. L, p. 70:2-20).

As for the allegation that Williams told Dunn's son that he might want to wear a dress, Dunn testified that her child told her that William's stated "anybody could wear whatever they want to wear." (Doc. 63-1, Ex. L, pp. 70:25-71:6).  Williams denied ever telling Dunn's child that it would be okay for him to wear a dress.  (Doc. 69-14, Ex. N, pp. 76:14-16).

As for the allegations that Williams told Dunn's child that she would never lie to him, Dunn testified that in December 2021, while her family was watching a show called the Good Doctor, her son asked how do doctors know "if you're a boy or a girl."  (Doc. 63-1, Ex. N, pp. 15:5-24). Dunn assumed her child was getting these questions from somewhere else, so, later in the day, she asked him why he was asking that question. (Doc. 63-1, Ex. N, pp. 15:25-16:5).  Dunn testified that her child was hesitant to talk, but eventually told her that "I don't want her to get in trouble, because teacher's never lie."  (Doc. 63-1, Ex. N, p. 16:5-10).  Dunn then specifically asked her child if Ms. Williams told him this information and he purportedly said "yes, she would never lie to me; sometimes doctors get it wrong and parents get it wrong." (Doc. 63-1, Ex. N, pp. 16:10-14; see also Doc. 63-1, Ex. O, p. 71:7-12).

Finally, the allegations that William's told Dunn's child not to tell his parents about these discussions and that if the subjects they were discussing came up at home, to say that "I heard it from a little birdie," are pure speculation on Dunn's part and not even based on hearsay statements purported made by her son.  Instead, Dunn testified that "in the beginning phases when I was asking him about who are you hearing this information from, he would say, a little birdie told me."  (Doc. 63-1, Ex. O, p. 71:19-21).  Plaintiff's allegations are based on Dunn's assumptions because she once heard Williams say "okay, little birdies, calm down" at a school holiday event.  (Doc. 63-1, Ex. O, p. 72:2-13).

These statements are not admissible under Rule 807.  For the reasons set forth above (not under oath, not subject to cross examination, made hours after the incident, witness having

an interest in the outcome of the litigation), these statements are not trustworthy.  Moreover, Plaintiffs have not identified any direct, admissible evidence corroborating these allegations. (Doc. 69, pp. 33-36).  In addition, and, for the reasons set forth above, Dunn's hearsay testimony is not more probative on the point for which it is offered than by any other evidence than testimony by Dunn's child.

### vi.   Dunn's Son's Comments to Williams About Changing Diapers

Plaintiffs seek to include the portion of Dunn's testimony where she testified that her child told her that on March 31, 2021, after Williams read the two books referenced in the Complaint, her child asked Williams if she had ever changed a diaper.  When she responded that she had, Dunn's child purportedly stated: "how come you didn't know he was a boy then because you would have known he had balls if you changed his diaper."  (Doc. 63-1, Ex. P, p. 51:10-18). Williams denied that this conversation occurred, and Plaintiffs have not identified any other corroborating evidence that this conversation occurred.  (Doc. 69, pp. 36-37; **Exhibit C**, pp. 77:19-78:4).

Plaintiffs argue that this testimony should be admitted under Rule 807 because Plaintiffs assert that there is absolutely no reason the child would fabricate the story and because a classroom aide, Sharron Boss testified that a different student made a similar inquiry to her.  (Doc. # 69, p. 37).  Contrary to Plaintiff's claims, however, for the reasons detailed above, these statements are not admissible under Rule 807 because they lack trustworthiness and are not more probative on the point for which it is offered than by any other evidence that the proponent can obtain through reasonable efforts.

### vii.   March 31, 2021 Instruction

Plaintiffs are correct that Defendants seek to exclude the Plaintiffs from testifying as to what their children purportedly told them occurred in Williams' classroom on March 31, 2021, even that which may be corroborated by other witnesses.  (Doc. # 69, pp. 19-24).  Specifically, Defendants object to Plaintiffs testifying that their children told them that on March 31, 2021,

Williams stated that parents and doctors sometimes get a child gender wrong, (Doc. 63-1, Ex. Q, p. 75:3-11; Ex. T, p. 22:3-9; Ex. U, p. 29:6-14; Ex. V., pp. 13:18-14:5; 14:17-15:9)), and that Williams told the class that she was bringing her daughter to Bring Your Child to Work Day. (Doc. 63-1, Ex. R, p. 99:9-20; Ex. S, pp. 47:4-9, 47:19-25; Ex. T, pp. 21:12-22:9). Defendants acknowledge that two paraprofessionals provided testimony similar to the proffered hearsay. (Doc. # 69, p. 22). However, the Plaintiffs' testimony should not be admitted into evidence under Rule 807 because that indirect testimony is not more probative on the point for which it is offered than the testimony of the aides who can be further questioned at trial on the subject. Because the parents' hearsay testimony does not meet the second criterion of Rule 807, such testimony should not be permitted.

### 2.   **The Selected Testimony Should not be Admitted for Non-Hearsay Purposes**

Plaintiffs' alternative argument that they are only attempting to introduce the challenged testimony to provide context, to show the effect on the listener and/or to show a child's state of mind under Rule 803 should also be rejected.  The problem with Plaintiffs' argument is that the mere fact that a party *claims* to offer evidence for a different purpose does not change the reality that they offer it for its truth.  United States v. Hoffecker, 530 F.3d 137, 192 (3d Cir. 2008).  These concerns are amplified in this case because many of the statements sought to be introduced (as described above) **are the sole evidence** supporting the allegations made against Williams. Accordingly, if not offered for the truth of the matter asserted, it is difficult to see how this proffered evidence is relevant to this case.  On the other hand, it is readily evident how this evidence is unfairly prejudicial to the Defendants. Fortunately, the courts and Rule 403 of the Federal Rules of Evidence provide an important protection when an out-of-court statement is offered as non-hearsay for its effect on the listener/context/background, etc. (or more broadly for any non-hearsay purpose).  See 4 Federal Rules of Evidence Manual § 801.02.

### a.  **Rule 803(3) Cannot Be Used to Establish Facts**

Rule 803(3) allows the introduction of "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)," as an exception to the hearsay rule. Fed. R. Evid. 803(3). This specific hearsay exception exists to prove a declarant's state of mind when that state of mind is relevant. Walker v. Studlack, No. 1:17-CV-2371, 2022 U.S. Dist. LEXIS 18309, at *16 (M.D. Pa. Feb. 1, 2022). Statements that are considered under the "state of mind" exception, cannot be offered to prove the truth of the underlying facts asserted." Id., at *16-17 ("In other words, statements that tend to prove the declarant's intent or state of mind regardless of the underlying truth are admissible, whereas statements that tend to prove the truth of the fact remembered are not admissible").

Three requirements must be satisfied for a statement to be admissible under the limited state of mind exception to the hearsay rule: 1) the statement must be contemporaneous with the mental state sought to be shown; 2) there must be no circumstances suggesting a motive for the declarant to misrepresent her thoughts; and 3) the declarant's state of mind must be relevant to an issue in the case. Phillips v. Potter, Civil Action No. 7-815, 2009 U.S. Dist. LEXIS 94383, at *7-9 (W.D. Pa. Oct. 9, 2009) (citing 5-803 Weinstein's Federal Evidence § 803.05). "Because this exception is limited to 'then existing' sensations and physical conditions, it does not apply to descriptions of past pain or symptoms, or to explanations of how an injury occurred." Id. Rule 803(3) specifically does not include "a statement of memory or belief to prove the fact remembered or believed." Id. Statements under Rule 803(3) are only admissible to show the *declarant's* state of mind. United States v. Macinnes, 23 F. Supp. 3d 536, 548 (E.D. Pa. 2014).

b.  **Res Gestae/Context and Effect on the Listener Cannot be Used to Establish Facts[5]**

Plaintiffs seek to admit testimony about their children's statements to them on the premise that such statements are offered for their effect upon the parents rather than the truth of the children's statements and, therefore, are not hearsay. Alternatively, Plaintiffs argue that hearsay testimony about statements made by their children and the parents' repetition of such statements to school officials should be admitted to provide broader context to those conversations. Acceptance of such all-encompassing arguments would virtually nullify the general principle of hearsay exclusion. Moreover, the contentions simply are disingenuous.  As noted by the Third Circuit, the mere fact that a party *claims* to offer evidence for a different purpose does not change the reality that they offer it for its truth.  Hoffecker, 530 F.3d at 192.

In Hoffecker, the defendant sought to introduce a tape that supported his claim that he was running a legitimate operation.  The government objected, asserting that the admission of the defendant's "out-of-court statements about the legitimacy of the Amitex operation would have been tantamount to allowing Hoffecker to testify without being subject to cross-examination."  Id.  The Third Circuit concluded that the district court properly excluded the tapes as inadmissible hearsay.[6]  A statement offered to show an effect on the listener is not hearsay only if the listener heard and reacted to the statement and if the "actual use" of the statement at trial is to demonstrate the listener's response. United States v. Graham, 47 F.4th 561, 567 (7th Cir. 2022) (citing United States v. Gaytan, 649 F.3d 573, 579-80 (7th Cir. 2011)); Jones v. Basinger, 635 F.3d 1030, 1042 n.2 (7th Cir. 2011).  In Graham, the Seventh Circuit held that because the government did not use a statement to show its effect on another party, but instead was used to

---

[5] The old catchall, "*res gestae*," is no longer part of the law of evidence. Miller v. Keating, 754 F.2d 507, 509 (3d Cir. 1985).

[6] To the extent background information is permitted as non-hearsay, courts require that the details of the hearsay statement be removed from the evidence.  United States v. Price, 458 F.3d 202, 209-10 (3d Cir. 2006); United States v. Gadson, 763 F.3d 1189, 1211-12 (9th Cir. 2014); United States v. Fluker, 698 F.3d 988, 1000 n.6 (7th Cir. 2012) (approving the admission of an email to provide context but requiring the government to redact a reference to a specific conversation).

invite the jury to accept as true the accusations, the statement was inadmissible hearsay.  Id.

Plaintiffs' attempts to the do the same should not be permitted.

### c. Rule 403 Mandates that These Statements, Which Go to Alleged Culpability, Be Excluded

Rule 403 provides that the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; Michaux v. Temas, No. 2:17-CV-01241-JFC, 2020 U.S. Dist. LEXIS 119724, at *28 (W.D. Pa. July 7, 2020). Unfair prejudice exists where there is an "undue tendency to suggest decision on an improper basis." United States v. Rutland, 372 F.3d 543, 546 (3d Cir. 2004) Snyder v. Davidson, No. 2:20-CV-01373-CCW, 2023 U.S. Dist. LEXIS 45915, at *3-4 (W.D. Pa. Mar. 20, 2023).[7]

When weighing the Rule 403 factors, courts 'must appraise the genuine need for the challenged evidence and balance that necessity against the risk of prejudice to the defendant.'" Id., at 118-19.  When evidence is highly probative, "even a large risk of unfair prejudice may be tolerable." The converse is also true. When the probative value of evidence is tenuous, a relatively minor risk of substantial undue prejudice should counsel against admitting it.  Id., at 119. However, when evidence has no probative value apart from its capacity to prejudice the jury, it must be excluded under Rule 403. Id., at 123.

When out-of-court statements are offered for a non-hearsay purpose, the primary risk is that the jury will take the statements not for the permissible use, but for the truth of the matter asserted.  In some circumstances, a limiting instruction can provide sufficient protection. Fed. R. Evid. 105.  However, a limiting instruction may not always sufficiently reduce the risk that the jury

[7] When determining whether evidence violates Rule 403, district courts must balance the probative value of the evidence against its prejudicial effect, clarifying its reasoning on-the-record. This requirement not only provides the parties with an explanation of the district court's reasoning, but also enables appellate courts to understand the district court's logic.  United States v. Bailey, 840 F.3d 99, 117 (3d Cir. 2016).

will misuse the statements. See Bruton v. United States, 391 U.S. 123, 135, 88 S. Ct. 1620, 1627, 20 L. Ed. 2d 476 (1968) ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."). In one case, a federal court acknowledged its error by allowing such statements (or by failing to issue a limiting jury instruction):

> utterances such as this one [effect on the listener] often have a hearsay aspect. Here, the jury might have jumped to the conclusion that because the unidentified person suggested the layoffs might be illegal, they were illegal. Unfortunately, I did not instruct the jury to confine their consideration of the declaration within proper boundaries.

Bhaya v. Westinghouse Elec. Corp., 709 F. Supp. 600, 603-04 (E.D. Pa. 1989).  Recognizing the prejudicial effect its error had, the court explained that it should have excluded the evidence under Rule 403 and ordered a new trial: "I am convinced that the unidentified person's declaration should have been excluded under Fed.R.Evid. 403, if not Fed.R.Evid. 402." Id., at 604.  See also Cange v. Phila. Parking Auth., No. 08-3480, 2010 U.S. Dist. LEXIS 8427, at *13-14 (E.D. Pa. Feb. 1, 2010) ("while plaintiff may argue that the statements are not hearsay because they were made to show the effect on the listener, I find that even if the evidence were admissible its slight probative value is outweighed by the unfair prejudice to defendant. The defendant will be unable to call the anonymous co-worker to the stand and verify that the statements were made, what Pierre's reaction to the statements were at the time, or ask any other pertinent question. . . . However, the risk to the defendant of unfair prejudice, confusion of the issues and misleading the jury leads me to exclude the evidence. Therefore, defendant's motion with respect to Pierre will be granted"); United States v. Macinnes, 23 F. Supp. 3d 536, 548 n.18 (E.D. Pa. 2014) (if Defendants maintain that the statements were not hearsay because they were not being offered for the truth, but rather

for the effect on the listener, the statements nonetheless have little probative value . . . were excludable under Rule 403 and Rule 608(b)).[8]

### d. Statements Should Not Be Admitted for Non-Hearsay Purposes

Plaintiffs' testimony as to their children's statements about what allegedly occurred in Williams' classroom is proffered precisely to attempt to prove the truth of those statements. There is no need for such testimony insofar as Plaintiffs' supposed reactions to those statements is not necessary to and would not establish any requisite element of Plaintiffs' claims. (Doc. 1).  Even if such testimony can concurrently be characterized as evidence of *res gestae* or effect on the listener, the parents' testimony about their children's statements of what Williams supposedly said indisputably has hearsay aspects and presents a significant risk that a jury would accept those recitations as evidence of what actually occurred. In sum, such testimony has little if any probative value, would be unfairly prejudicial to the Defendants and should be excluded.

### i. Pledge of Allegiance

Plaintiffs argue that the testimony of L.R. and M.R. is not offered for the truth of the matter asserted, but to establish the context of their conversation with Principal Bielewicz. (Doc. 69, p. 28). Such testimony is being offered for the truth of the matter asserted and Plaintiffs' claims to the contrary do not change this reality.  Hoffecker, 530 F.3d at 192.  The gist of the conversation with Principal Bielewicz was Williams' reading of the *Aidan* and *Teddy* books, not the Pledge of Allegiance, so their hearsay statements about the Pledge is wholly unnecessary to understanding that conversation. (Doc. 63-1, Ex. G, pp. 29:18-30:15).  To the extent L.R. and M.R. would testify as to their conversation with Principal Bielewicz, such hearsay statements - particularly their claim

---

[8]     The danger of unfair prejudice is greatest when the statements, if taken for the truth of the matter asserted, bear directly on the guilt or innocence of the defendant. United States v. Gomez, 529 F.2d 412, 416-17 (5th Cir. 1976); United States v. Elysee, 993 F.3d 1309, 1342-43 (11th Cir. 2021).

that Williams "was trying to be sarcastic" - have no probative value, are unfairly prejudicial and must be excluded. Price, 458 F.3d at 209-10.[9]

### ii. Dunn's September 2021 Conversation with Williams

Plaintiffs argue that they are not offering this testimony for the truth, but merely trying to provide context of the conversation between the Williams and Dunn on September 21, 2022. (Doc. #69, p. 30; citing Hendricks, 395 F.3d at 184).  This position then contradicted by their next statement that the "jury would have no idea what statement **Williams adopted through her refusal to deny** Ms. Dunn's accusation." (Doc. #69, p. 30).  Since Plaintiffs are clearly attempting to admit this statement for its truth, it must be excluded as hearsay.  United States v. Hoffecker, 530 F.3d 137, 192 (3d Cir. 2008).

Plaintiffs also argue that the statements are admissible under Rule 803(3) because Dunn's child was upset and the statements about what had upset Dunn's son show his state of mind. (Doc. #69, p. 31).  Plaintiffs' acknowledgement that they want to admit the statement to show what upset Dunn's child (i.e., for the truth of the fact that Williams made these statements) excludes it from Rule 803(3) because Rule 803(3) specifically does not include "a statement of memory or belief to prove the fact remembered or believed."  Phillips v. Potter, Civil Action No. 7-815, 2009 U.S. Dist. LEXIS 94383, at *7-9 (W.D. Pa. Oct. 9, 2009).

Finally, Plaintiffs argue that these statements from September 2021 are necessary to understand the context of an email that Dunn wrote to the District's Superintendent in April 2022. (Doc. #69, p. 31).  To the contrary, the email attached to Plaintiffs' Response as Exhibit DD (Doc. 69-30) is a document that must be admissible or inadmissible on its own.  Moreover, the statement "not to have my child told that he can wear dresses, make-up, etc." is based on what Dunn purportedly learned from her son and itself is inadmissible hearsay. See United States v. Fluker,

---

[9] In addition, M.R.'s testimony, which consists of him reciting what his wife told Principal Bielewicz about the Pledge of Allegiance is double-hearsay and should be excluded under Rule 805.  (Doc. 63-1, Ex. G, pp. 29:18-30:15).

698 F.3d 988, 1000 n.6 (7th Cir. 2012) (approving the admission of an email to provide context but required the government to redact a reference to a specific conversation.).

### iii.   The Targeting and Grooming of Dunn's Son

Plaintiffs argue that these statements should be admitted, not for the truth of the matter asserted (*i.e.*, that Williams targeted and groomed Dunn's son and told him not to tell his parents about these conversations), but instead to show the impact they had on Dunn. (Doc. 69, p. 33). A statement is offered to show an effect on the listener only if the listener heard and reacted to the statement and if the "actual use" of the statement at trial is to demonstrate the listener's response. United States v. Graham, 47 F.4th 561, 567 (7th Cir. 2022). However, this testimony is inadmissible hearsay because this is the only evidence Plaintiffs have to support their allegations that Williams engaged in such conduct, so the actual use must be to convince this Court and any jury to accept these accusations as true.  Id.; Hoffecker, 530 F.3d at 192.

Next, Plaintiffs argue that such statements are necessary to show the context of Dunn's response to her son, where she testified that she told him in December: "she may not lie about certain things, but she lied to you about this; parents do not get it wrong and doctors do not get it wrong; you know who you are; you know what you are and no one else can tell you otherwise." (Doc. 69, pp. 33-34;Doc. 63-1, Ex. N, p. 16:14-19).  However, there simply is no purpose to such testimony other than to establish through hearsay the allegation that Williams told Dunn's son she would never lie to him.

Plaintiffs then argue that these statements should be admitted to show Dunn's child's confused state of mind. (Doc. 69, pp. 34-35).  Initially, statements that are considered under the "state of mind" exception, cannot be offered to prove the truth of the underlying facts asserted." Walker v. Studlack, No. 1:17-CV-2371, 2022 U.S. Dist. LEXIS 18309, at *16 (M.D. Pa. Feb. 1, 2022). Further, the statement must be contemporaneous with the mental state sought to be shown.  Phillips v. Potter, Civil Action No. 7-815, 2009 U.S. Dist. LEXIS 94383, at *7-9 (W.D. Pa. Oct. 9, 2009).   None of the testimony selected by Plaintiffs provides specific examples of Dunn's

child being confused or upset when purportedly talking with his mother.   Nothing in Dunn's testimony indicates that her child was confused or upset when they discussed how doctors know if a baby is a boy or a girl while watching *The Good Doctor*.  (Doc. 63-1, Ex. N, pp. 15:5-16:19). Similarly, nothing in Dunn's testimony indicates that her child was confused or upset when testifying that he told her that he heard certain things from "a little birdie."  (Doc. 63-1, Ex. O, p. 71:7-72:13).  This specific hearsay exception exists to prove a declarant's state of mind only when that state of mind is relevant.  Id.  No such purpose is served by Dunn's proposed testimony.[10]

### iv. March 31, 2021 Instruction

The testimony with respect to the March 31, 2021 instruction should not be admitted for non-hearsay purposes. Plaintiffs argue that L.R.'s testimony about what she told Principal Bielewicz (mistakenly referenced in Plaintiffs' brief as Dr. Steinhauer) should be admitted to provide context. (Doc. 69, p. 21).   Because the meeting was requested by L.R. to express dissatisfaction with the reading of *Aidan* and *Teddy* in class, her hearsay statement about Take Your Child to Work Day is wholly unnecessary to understanding that conversation and, despite Plaintiffs' assurances otherwise, would be offered to prove the statements attributed to Williams. To the extent anything is admitted to provide context, the detailed hearsay statement must be omitted.  United States v. Price, 458 F.3d 202, 209-10 (3d Cir. 2006).

As for the other statements, the testimony should not be admitted to show the effect on the listener because the Plaintiffs' state of mind is not relevant to whether the Defendants' violated their constitutional rights.  (Doc. 69, p. 22).  Finally, with respect to M.R. and L.R.'s testimony about their daughter's confusion about her teddy bear's gender, the challenged portion of testimony is M.R.'s recollection about what L.R. told him that their daughter told L.R.  (Doc. 63-1,

---

[10] In responses to requests for documents, Plaintiffs have stated that none of their children received counseling or therapy as a result of anything that occurred in Williams' classroom. (See **Exhibit A, ¶¶** 12-14 attached hereto; see also **Exhibit B**, pp: 42:4-44:22 attached hereto. Children's names have been redacted from these documents).

Ex. V, pp. 14:17-15:9).  To the extent their daughter's confusion is relevant, this is inadmissible double-hearsay under Rule 805 and should be excluded.

### v. Rule 403

Admitting any of this testimony under the guise of showing the effect on the listener, the context of the discussions and/or the state of mind would violate Rule 403 because there is a very foreseeable and likely risk that the jury will consider these statements for the truth of the matter asserted, especially when the hearsay testimony is the only evidence in support of a claim. When evidence has no probative value apart from its capacity to prejudice the jury against the defendants, it must be excluded under Rule 403. United States v. Bailey, 840 F.3d 99, 123 (3d Cir. 2016); United States v. Macinnes, 23 F. Supp. 3d 536, 548 n.18 (E.D. Pa. 2014) (if Defendants maintain that the statements were not hearsay because they were not being offered for the truth, but rather for the effect on the listener, the statements nonetheless have little probative value . . .  were excludable under Rule 403 and Rule 608(b)).

## III.   Conclusion

For the reasons set forth above, Defendants, Mt. Lebanon School District, Megan Williams, Dr. Timothy Steinhauer, Dr. Marybeth Irvin, Brett Bielewicz and Jacob W. Wyland, by their attorneys, Tucker Arensberg, P.C., request an Order precluding Plaintiffs from introducing the foregoing hearsay statements as evidence at the trial of this matter or in support of or in opposition to any pre-trial motion.

Respectfully submitted,

TUCKER ARENSBERG, P.C.

/s/ Matthew M. Hoffman
Matthew M. Hoffman
Pa. I.D. #43949
mhoffman@tuckerlaw.com

Christopher L. Voltz
PA I.D. #200704
cvoltz@tuckerlaw.com

Thomas P. Peterson
Pa. I.D. #32624
tpeterson@tuckerlaw.com

1500 One PPG Place
Pittsburgh, PA  15222
(412) 566-1212
Dated: October 2, 2023              Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October 2023, I have filed electronically the foregoing Defendants' Reply Brief in Support of Motion *in Limine* to Preclude the Use of Hearsay Statements as Evidence with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to the following attorney(s) of record addressed as follows:

> David J. Berardinelli, Esquire
> DEFOREST KOSCELNIK & BERARDINELLI
> 436 Seventh Ave., 30th Fl.
> Pittsburgh, PA  15219
> Phone:  412-227-3100
> Fax:    412-227-3130
> Email:  berardinelli@deforestlawfirm.com

> Respectfully submitted,
>
> */s/ Matthew M. Hoffman*
> Matthew M. Hoffman
> Pa.I.D. # 43949
> mhoffman@tuckerlaw.com
>
> 1500 One PPG Place
> Pittsburgh, PA  15222
> (412) 566-1212
>
> Attorneys for Defendants

TADMS:20115107-1:032545-194804