## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMILLA TATEL, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Docket No.: 2:22-cv-837 |
| | ) | |
| v. | ) | |
| | ) | |
| MT. LEBANON SCHOOL DISTRICT, ET | ) | |
| AL., | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

### PLAINTIFFS' SURREPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*, BRIEF IN SUPPORT AND REPLY BRIEF (DOC. NOS. 63, 64 AND 74)

This Surreply Brief addresses, *inter alia*, the following issues raised in Defendants' Reply Brief that either (1) misstate the applicable law, (2) inaccurately characterize the factual record, and/or (3) are raised for the first time in Defendant's Reply Brief. Based on the information in this Surreply Brief and in Plaintiffs' original Brief in Opposition (Doc. 69), Defendant's motion *in limine* should be denied.

1. **Defendants' assertion that testimony from the parents is inadmissible because they "have an interest in the outcome of this litigation" is contrary to applicable law.**

Based exclusively on law that pre-dates the 2019 Amendments to Federal Rule of Evidence 807, Defendants incorrectly argue for what amounts to a *per se* exclusion of any testimony from the parents about what their children told them. As an initial matter, this argument could have been, but was not, raised in Defendants' moving brief (Doc. 64) as everyone knew what statements were involved and who the testifying witness would be. Accordingly, the Defendants should be precluded from now making this argument. *E.g., Bayer AG v. Schein Pharmaceutical, Inc.*, 129 F.Supp.2d 705, 715-16 (D.N.J. 2001).

Moreover, in making this argument, Defendants rely **exclusively** on cases that pre-date 2019. Defendants argue "because Plaintiffs have an interest in the outcome of this litigation and

are aided by the hearsay statements, the statements are inherently untrustworthy." Doc. 74, p. 5. This argument is legally infirm. Not only would adopting this position improperly re-write Rule 807, but the Advisory Committee Notes to the 2019 Amendments to Rule 807 (emphasis added) expressly reject this very argument:

> In deciding whether the statement is supported by sufficient guarantees of trustworthiness, the court should **not** consider the credibility of any witness who relates the declarant's hearsay statements in court. The credibility of an in-court witness does not present a hearsay question. To base admission or exclusion of a hearsay statement on the witness's credibility would usurp the jury's role of determining the credibility of testifying witnesses. The rule provides that the focus for trustworthiness is on circumstantial guarantees surrounding the making of the statement itself, as well as any independent evidence corroborating the statement. The credibility of the witness relating the statement is **not** part of either inquiry.

In light of this guidance, Defendants' position is clearly incorrect and cannot survive.

Further, the cases cited by the defense on page 5 of their Reply are all inapposite in that they each involve "the lack of any corroborating evidence" or "no corroborating evidence" (Doc. 74, p. 5), which certainly is not the case here as discussed in Plaintiffs' Opposition (Doc. 69).[1]

2. **Testimony from a child-declarant is not required for admission under Rule 807.**

Defendants contend that Rule 807 should not be utilized unless the child-declarant testifies. Doc. 74, at 7-9. Again, this issue could have been, but was not, raised in Defendants' moving brief (Doc. 64) and, accordingly, should be rejected/stricken. *E.g., Bayer AG,* 129 F.Supp.2d at 715-16.

As to the merits, to accept this position would be to rewrite Rule 807. The Rule has no such requirement and neither the Third Circuit nor U.S. Supreme Court has imposed any such requirement. The fallacy of Defendants' position is further demonstrated by (1) the fact that none of the cases cited on page 7 of the Reply Brief involve a child-declarant and (2) Plaintiffs' citation

---

[1]     Additionally, even the Defendants' incorrect legal position would not apply to any testimony by L.R. and M.R. who are not parties.

in their Opposition Brief to numerous cases where testimony was admitted under Rule 807 and the child-declarant did **not** testify. Doc. 69, pp. 13-14.[2]

In making their argument, Defendants rely on the fact that child-declarants did testify in certain of the cases cited by Plaintiffs, including *Virgin Islands v. Morris*, 191 F.R.D. 82, 87 (D.V.I. 1999). *See* Doc. 74, p. 9. However, the *Morris* court expressly noted that, under the residual exception, "[t]he declarant's availability is immaterial." *Id.*, n.6. Using the appropriate standard under Rule 807, Defendants stand by the position that the parents (as opposed to the children) are "more probative" witnesses to testify about the parent/child conversations at issue – this is particularly true since the claims at issue are based on the Defendants' violations of the parents' Constitutional rights and given that the parents' have clear recollection of the conversations versus what a now eight-year-old child might remember two years later.[3]

Similarly, Defendants rely extensively on general standards articulated for evaluating trustworthiness under Rule 807 including whether the statement was made under oath and subject to cross-examination. *E.g.,* Doc. 74, pp. 4-5. This ignores that courts have developed different, more particularized standards in evaluating statements of child-declarants. *See* Doc. 69, p. 13.[4]

---

[2]  *See U.S. v. Thunder Horse*, 370 F.3d 745 (8th Cir. 2004); *Morgan v. Foretich*, 846 F.2d 941, 948 (4th Cir. 1988); *Doe v. U.S.*, 976 F.2d 1071 (7th Cir. 1992); *Sanchez v. Brokop*, 398 F.Supp.2d 1177, 1192 (D.N.M. 2005); *accord, Doe ex rel. Doe v. Darien Bd. of Educ.*, 110 F.Supp.3d 386 (D. Conn. 2015); *R.D. v. Shohola, Inc.*, 3:16-CV-01056, 2019 WL 6211328, at \*5 (M.D. Pa. Nov. 20, 2019); *see generally, Idaho v. Wright*, 497 U.S. 805, 821-22 (1990). It is also noteworthy that several of the above-cited cases were civil actions and, unlike the present case, the child-declarant was the plaintiff on whose behalf the case was brought. In part of this section of their Reply Brief (page 9), Defendants rely exclusively on criminal cases which inherently involve different issues and concerns. *See* Doc. 74, p. 9. Also, none of the cases cited on page 9 of the Reply Brief are from the Third Circuit (and consist almost exclusively of Eighth Circuit cases).

[3]  As the Court is aware, the children themselves no longer have affirmative legal claims as Count V, which was the only claim brought on behalf of the children, was dismissed (Doc. 38, p. 49-50). This distinguishes the cases denying protective orders for child plaintiffs cited by the Defendants on pages 13-14 of their Reply Brief (Doc. 74, pp. 13-14).

[4]  Also, other courts in the Third Circuit have utilized different factors than those posited by Defendants in evaluating admissibility under Rule 807. *E.g., Wezorek v. Allstate Ins. Co.*, 2007 WL

3

Further, applying a standard where the only statements admissible under Rule 807 are those made under oath and subject to cross-examination would be contrary to Rule 807's plain language requiring an analysis of the "totality of circumstances under which [the statement] was made and evidence, if any, corroborating the statement," as well as well-established law indicating that an analysis under Rule 807 is "a highly fact specific inquiry." *U.S. v. Turner*, 718 F.3d 226, 233 (3d Cir. 2013). When Defendants' cases are closely analyzed, they mostly turn on the issue of corroboration or lack of it – whereas, here, the statements at issue are each buttressed by corroboration as explained in Plaintiffs' Brief in Opposition (Doc. 69).

3.  **Rule 403 does not bar admission of the statements at issue.**

For the first time, in their Reply Brief, Defendants argue that the proffered testimony should be excluded under Rule 403. This argument was not made in Defendants' moving Brief (Doc. 64) and, therefore, should be rejected or stricken. *E.g., Bayer AG*, 129 F.Supp.2d at 715-16.

As to the merits, the bulk of the conversations at issue are between the parents and their young children.  In a case where the claims are founded, *inter alia*, on violations of the parents' parental rights recognized under substantive due process and their Frist Amendment religious rights, it is difficult to imagine more probative evidence than the parents explaining what their children told them about Williams' gender identity instruction and how the discussions with their children made them feel. This testimony is immediate evidence embodying the Constitutional violations at issue and the harm, *i.e.,* the effect on the listener (here, the parents).[5] The same is true for discussions

---

1816293, at *2 (E.D.Pa. 2007).

[5]  The parents are the relevant "listener" or "hearer" as to the challenged statements. This renders Defendants' arguments on pages 23-24 of their Reply Brief inapposite as the cases cited at those pages deal with efforts to introduce evidence unrelated to the effect on the relevant hearer or listener. Given the claims in this action, Defendants' assertion on page 26 of their Reply Brief that "Plaintiffs' supposed reaction to those statements is not necessary to and would not establish any requisite element of Plaintiffs' claims" and a similar assertion on page 29 are specious.

4

that demonstrate how Williams' instruction confused the children. *See* Fed.R.Evid 803(3); *U.S. v. Gonzalez*, 905 F.3d 165, 201 (3d Cir. 2018) (holding statements tending to show how defendant's acts affected declarant's emotional state admissible). Given the incredibly relevant and probative nature of this evidence, any balancing under Rule 403 must favor admissibility.[6]

This conclusion is further buttressed by the fact that, as to the events of March 31, 2021, the classroom aides will provide testimony about Williams' two gender identify lessons that she taught her six- and seven-year old students on March 31, 2022 – this testimony from the aides is clearly admissible and the fact that the jury will hear it neuters any claimed prejudice related to the children telling their parents about the **same** instruction or similar statements made by Williams. That Plaintiffs have disclosed other statements on this subject matter that Defendants do not seek to exclude (*see* Doc. 69, pp. 20, 25) also undermines any purported prejudice. Finally, if deemed appropriate, the Court can provide limiting instructions, which Third Circuit law presumes that jurors follow. *E.g., Adamson v. Cathel*, 633 F.3d 248, 257-58 (3d. Cir. 2011).[7]

### 4. Inferences do not create a hearsay issue.

Defendants take issue with inferences that the Plaintiffs draw from certain evidence. For instance, they complaint that Mrs. Tatel and L.R. infer that Williams' statement about the pledge of allegiance was sarcastic. Doc. 74, pp. 2, 15-16. Drawing an inference from Williams' statement is not a hearsay issue. Defendants will be free to cross-examine and challenge whether the

---

[6]     The facts in the instant case and motion bear no resemblance to those in *U.S. v. Hoffecker*, 530 F.3d 137, 192 (3d Cir, 2008) on which the Defendants rely, rending *Hoffecker* inapposite. Here, unlike in *Hoffecker*, the statements at issue are either admissible under Rule 807 or other hearsay exceptions or are legitimately not offered for the truth.

[7]     As a civil matter, the instant action does not implicate any Confrontation Clause issues that, under *Bruton v. U.S.,* 391 U.S. 123 (1968) and its progeny, give rise to certain exceptions to the general presumption regarding jurors following instructions in order to ensure that a criminal defendant's Constitutional rights are protected.

inference is legitimate or not. Similarly, Mrs. Dunn draws an inference about the source of her

son's statement to her that "a little birdie" told him about parents and doctors sometimes getting a

child's gender wrong from a prior statement she heard Williams make. Doc. 74, p. 2, 19. She can

be cross-examined on the basis for her inference.  This simply is not a hearsay issue and no basis

for excluding testimony about these inferences exists.

### 5.  Whether the circumstances of the September 2021 conversation between Mrs. Dunn and Williams give rise to an adoptive admission is a jury question.

Citing only to a portion of the relevant deposition testimony, Defendants contend that when,

at a conference in September 2021, Mrs. Dunn confronted Williams with what her son had told

Mrs. Dunn that Williams had said to him, Williams denied it. Doc. 74, pp. 12, 17. Ms. Dunn's

deposition does not support this claimed denial. Rather it says, "Nor did she deny it."  Dunn Dep.

at 10-12. When Williams then tried to claim that Mrs. Dunn's son might have been confused, Mrs.

Dunn indicated her son was adamant about what Williams said to him – to this latter statement

Williams was silent. *Id.* Given this record, whether or not this exchange amounts to an adoptive

admission is a jury question and certainly no basis for exclusion exists. *E.g., U.S. v. Sears*, 663

F.2d 896, 904 (9th Cir. 1981) ("The jury is primarily responsible for deciding whether, in light of

all the surrounding facts and circumstances, the defendant [] acquiesced in the statement.").[8]

Additionally, this conversation should clearly have placed Williams on notice of Mrs. Dunn's

objections to instruction related to gender identity issues and is independently admissible for this

reason and the other reason discussed in Plaintiff's Opposition (Doc. 69, pp. 33-36), including to

show what had upset Mrs. Dunn's son. *Gonzalez*, 905 F.3d 1at 201 (holding statements tending to

show how defendant's acts affected declarant's emotional state admissible).

---

[8]     Defendants attach as Exhibit C to their Reply Brief excerpts from Williams' deposition where she
denies having certain conversations or making certain statements. These post-litigation, self-serving denials

6. **Defendants' Reply Brief mischaracterizes the record evidence and incorrectly asserts that certain documents are inadmissible.**

Defendants also mischaracterize the record in their Reply Brief in other respects. For example, Defendants contend that "[n]othing in Dunn's testimony indicates that her child was confused or upset when they discussed how doctors know if a baby is a boy or a girl while watching *The Good Doctor*." Doc. 74, p. 29. The deposition testimony of Mrs. Dunn is directly to the contrary. While testifying about this conversation with her son – which conversation was the result of what Williams had said to the young boy – Mrs. Dunn testified that he was "super confused and upset." Dunn Depo., p. 14, Line 19-10 (quoted in Doc. 64, p. 26). Not only have Defendants inaccurately characterized the record, but the confusion and upset experienced by Mrs. Dunn's son makes the statement at issue admissible, *inter alia,* under Rule 803(3). *Gonzalez*, 905 F.3d at 201.

Similarly, Defendants argue that certain documents, including Mrs. Dunn's notes and an email she sent to Defendant Steinhauer are not admissible and that this bears on the hearsay analysis. Doc. 74, pp. 17, 27. This premise is faulty. Mrs. Dunn will testify at trial, so these documents are not hearsay – certainly her email to a named Defendant complaining about Williams' conduct toward her son (and his lack of a response to the email) is relevant admissible evidence. Similarly, as the motion *in limine* at issue and the Defendants' briefs clearly demonstrate, the Defendants are challenging Mrs. Dunn's credibility; this makes the notes of the September 2021 conference admissible, *inter alia*, under Rule 801(d).

Based on the information in this Surreply and in Plaintiffs' original Brief in Opposition (Doc. 69), Defendant's motion *in limine* should be denied.

---

are not pertinent to the Court's present evidentiary analysis as Williams' denials raise a credibility issue for the jury not a basis for exclusion. *See e.g.,* 2019 Advisory Committee Notes to Rule 807 ("To base admission or exclusion of a hearsay statement on the witness's credibility would usurp the jury's role of determining the credibility of testifying witnesses.).

Dated: October 5, 2023                         Respectfully Submitted,

                                               By:  s/ David J. Berardinelli
                                                   David J. Berardinelli, PA I.D. No. 79204
                                                   DEFOREST KOSCELNIK & BERARDINELLI
                                                   436 Seventh Ave., 30th Fl.
                                                   Pittsburgh, PA 15219
                                                   Phone: 412-227-3100
                                                   Fax: 412-227-3130
                                                   Email:    berardinelli@deforestlawfirm.com
                                                   *Counsel for Plaintiffs Carmilla Tatel,*
                                                   *Stacy Dunn and Gretchen Melton*