UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARMILLA TATEL, STACY DUNN, and GRETCHEN MELTON, individually and as parents and natural guardians of their children,<br><br>Plaintiffs,<br><br>v.<br><br>MT. LEBANON SCHOOL DISTRICT, MEGAN WILLIAMS, DR. TIMOTHY STEINHAUER, DR. MARYBETH D. IRVIN, BRETT BIELEWICZ, and JACOB W. WYLAND,<br><br>Defendants. | CIVIL ACTION NO. 2:22-cv-837<br><br>Judge Joy Flowers Conti |

**MOTION AND MEMORANDUM IN SUPPORT FOR RECONSIDERATION OF THE COURT'S OPINION DENYING LEBO PRIDE'S MOTION FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF**

**AND NOW COMES** *Amicus Curiae* Lebo Pride, by and through its undersigned legal counsel, to move this Honorable Court to reconsider its Opinion (ECF No. 130) and Order (ECF No. 131) denying Lebo Pride's Motion for Leave to File an *Amicus Curiae* Brief (ECF No. 117) for the reasons set forth herein.

I.   Introduction

Lebo Pride respectfully files this Motion for Reconsideration of the Court's Opinion Denying its Motion for Leave to File. Lebo Pride recognizes that requests for reconsideration are rarely granted and that a court has broad discretion to accept or reject an *Amicus* Brief; however, reconsideration is appropriate in this situation, as the Court's Opinion Denying Lebo Pride's Motion for Leave to File [hereinafter "*Amicus* Opinion"] appears to take for granted Plaintiffs' characterization of Lebo Pride's brief, which fundamentally misapprehends *Amici's* arguments.

1

In particular, the Court seems to have factually misconstrued Lebo Pride's brief in two pivotal ways. First, the Court repeatedly indicates that it believes Lebo Pride's *Amicus* Brief makes a policy argument in favor of LGBTQ-inclusive curriculum. As Lebo Pride stated in its Motion for Leave to File an *Amicus* Brief (ECF No. 117) [hereinafter "Motion for Leave to File"], in the body of its *Amicus* Brief, and as it will further explain below, Lebo Pride does not argue at any point in its brief that the Mt. Lebanon School District [hereinafter "the District"] should adopt an LGBTQ-inclusive curriculum. Rather, Lebo Pride argues that the Plaintiffs do not have a substantive due process right to opt their children out of LGBTQ-inclusive curriculum, because such curriculum is narrowly tailored to serve a compelling state interest. Lebo Pride's argument cites to case law and social science research for the purpose of showing that the District has a compelling state interest in protecting transgender students from discrimination and that an LGBTQ-inclusive curriculum, without an opt out, is a narrowly tailored means to achieve this interest. Lebo Pride's brief is not about what the District should or should not be doing; it is about what the parent-plaintiffs in this case can and cannot demand under the U.S. Constitution. This is a nuanced, but fundamental distinction, and one which this Court's *Amicus* Opinion repeatedly misconstrued in a way that seems to have significantly influenced its decision to deny Lebo Pride's Motion for Leave to File.

Second, the Court seems to ignore the nature of the relief Plaintiffs are seeking in this case. In their request for summary judgment, Plaintiffs ask this Court to order declaratory judgment precluding the District "from providing instruction related to gender identity without providing direct advance notice to parents and the ability to opt out of such instruction." (ECF No. 93 at 35). This relief is sweeping in its scope. It does not apply only to Plaintiffs and their children, to parents and students in Ms. Williams' class, or even to students at Jefferson

Elementary School. Plaintiffs' requested relief would apply to all students, of all ages, in every school, across every subject and classroom within the District. As such, the Court mischaracterizes Lebo Pride as an unaffected third-party. Lebo Pride, whose members include parents, students, and community members who work with the District, will be directly and immediately effected by the outcome of this case. If the Court orders a sweeping, permanent opt-out, as requested by Plaintiffs, the transgender students who participate in, and benefit from, Lebo Pride's work will be at risk of experiencing the harmful consequences outlined in Lebo Pride's brief. Thus, by framing Lebo Pride's interest as that of an advocacy group promoting certain policies, the Court misconstrues the position of Lebo Pride relative to the relief being sought here. This misunderstanding is significant, as it seems to have played a critical role in the Court's analysis of the *Sciotto* factors for assessing *amicus* motions at the District Court level.

Given these two important factual mistakes, as well as additional incongruities described below, Lebo Pride respectfully requests that the Court more closely examine its proposed brief and reconsider its decision denying Lebo Pride's Motion for Leave to File.

## II.     Standard on Reconsideration

Motions for reconsideration are typically decided under Federal Rules of Civil Procedure 59(e) or 60(b). *Black Bear Energy Servs., Inc. v. Youngstown Pipe & Steel, LLC*, 2021 WL 4751746, at *3 (W.D. Pa. 2021). Under this standard, a motion for reconsideration must rely on "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Bootay v. KBR, Inc.*, 437 F. App'x 140, 147 (3d Cir. 2011). To prevail, the "movant must demonstrate a 'definite and firm

conviction that a mistake has been committed,' or that ***the court overlooked arguments that were previously made***." *Black Bear*, 2021 WL 4751746, at *3 (emphasis added). "A motion for reconsideration is also appropriate in instances where the court has '***patently misunderstood a party***, or has made a decision outside the adversarial issues presented to the Court by the parties, or ***has made an error not of reasoning but of apprehension***.'" *Ivy v. Wetzal*, 2023 WL 3074900, at *1 (W.D. Pa. 2023) (quoting *Rohrboach v. AT & T Nassau Metals Corp.*, 902 F. Supp. 523, 527 (M.D. Pa. 1995)) (emphasis added).[1]

### III. The *Sciotto* Factors

In its *Amicus* Opinion, the Court found that all four *Sciotto* factors weigh in favor of denying Lebo Pride's Motion. Upon review of the Court's *Amicus* Opinion, it is readily apparent that the Court's reasoning involved "error[s] not of reasoning but of apprehension," as it appears that the court "patently misunderstood" and "overlooked arguments that were previously made" by Lebo Pride. *Id.*; *Black Bear*, 2021 WL 4751746, at *3. Given these "clear errors" regarding the most fundamental aspects of Lebo Pride's Brief, Lebo Pride respectfully requests that the Court reconsider its decision denying its Motion for Leave to File. *Bootay*, 437 F. App'x at 147.

#### A. The First *Sciotto* Factor

Under the first factor of the *Sciotto* test, a petitioner must evince a "special interest" in the particular case. *Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 555 (E.D. Pa. 1999). In its *Amicus* Opinion, the Court states that Lebo Pride does not have a special interest,

---

[1] Motions for reconsideration of interlocutory orders under Rule 54(b) are assessed under a less stringent standard and may be granted "even if the movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issued the underlying order, or the 'need to correct a clear error of law or fact or to prevent manifest injustice.'" *Black Bear*, 2021 WL 4751746, at *3 (quoting *Qazizadeh v. Pinnacle Health Sys.*, 214 F.Supp.3d 292, 298 (M.D. Pa. 2016)). *Amici* has not located any case law addressing whether an order denying leave to participate as *amicus curiae* is a final or interlocutory order; however, by either standard, Lebo Pride has established grounds for reconsideration of the Court's *Amicus* Opinion.

because Lebo Pride's "interests appear to be largely at the policy level." (ECF No. 130 at 4). While Lebo Pride's brief does provide a short background section on the national anti-trans movement, the vast majority – 10 out of 13 pages – focuses exclusively on the question of whether implementing instruction about gender identity, without a parental opt-out, is a narrowly tailored practice that serves a compelling state interest. This is a purely legal question. In fact, it is a question that this Court posed in its opinion on motion to dismiss, wherein this Court stated that "the District must demonstrate why it has a compelling need to prevent these particular Plaintiffs from opting their children out of this particular instruction." (ECF No. 38 at 33).

     Lebo Pride's brief does not focus on best practices or the public good, areas that are traditionally the focus of public policy arguments; rather, Lebo Pride's argument cites extensively to case law and social science research to show that the District has a compelling state interest in protecting the transgender students from discrimination and that an LGBTQ-inclusive curriculum, without an opt out, is a narrowly tailored means to achieve this interest. This purely legal argument is fundamentally different from the policy arguments presented by *amici* in *Sciotto*. Based on the *Amicus* Opinion, the Court seems to believe that Lebo Pride's brief focuses on the importance of "treating all students with kindness, tolerance and respect." (ECF No. 130 at 4). While we can likely all agree that these are laudable goals, they are not the foundation nor the objective of Lebo Pride's argument. Lebo Pride's brief is not about achieving kindness, tolerance, or respect; it is about a school district's duty to protect transgender students from discrimination – a duty that has been explicitly recognized as a compelling state interest by the Third Circuit. *Doe by and through Doe v. Boyertown Area School District*, 897 F. 3d 518, 528-29 (2018). By describing Lebo Pride's brief as a policy argument, it is clear that the Court has patently misunderstood the legal reasoning presented therein. *Ivy,* 2023 WL 3074900, at *1.

Furthermore, at no point in its *Amicus* brief did Lebo Pride argue that the District is required to, or even should, adopt LGBTQ-inclusive curriculum. *Amici*'s argument does not speak to constraints or obligations placed on schools; it is exclusively focused on the substantive due process rights of *parents*. In other words, Lebo Pride is *not* arguing that school districts must implement LGBTQ-inclusive curricula. Lebo Pride is arguing that when school districts choose to implement LGBTQ-inclusive curricula in order to protect transgender students from discrimination, parents do not have a constitutional right to opt their children out of such curricula. Again, this is not a policy argument or tangential to the issues in this case. Plaintiffs claim that they have a fundamental right to direct the education and upbringing of their children, and that, unless the Court finds that the District's actions were narrowly-tailored to serve a compelling state interest, this parental right entitles them to declaratory relief in the form of an opt-out from instruction on gender identity. But Lebo Pride's brief shows that the practice of implementing LGBTQ-inclusive curricula, including educating elementary school students about gender identity, is narrowly tailored to serve the District's compelling state interest in protecting transgender students from discrimination. Lebo Pride's argument has nothing to do with policy; it speaks directly to the legal question this Court posed in its opinion on motion to dismiss.

Lebo Pride's interest in this case is also not a hypothetical "policy" or "political" interest. Plaintiffs in this case are not asking solely for monetary relief for harm done to their individual children or even for opt-outs for only their children. Plaintiffs are asking for relief that would allow them and *any other parent* in the District to opt their children out of lessons on gender identity – lessons taught by any teacher, in any subject matter, in any school building across the District, now and into the future. While the Court frames this case as one involving "the extent of parents' constitutional rights to control when and how information about transgender topics is

6

presented by a public school *to their first-grade children*," (ECF No. 38 at 1), the relief Plaintiffs seek is not limited to "their" children or to "first-grade children." The opt-out they seek extends to all parents and students within the District, and, if granted, would most certainly affect student and parent members of Lebo Pride. Moreover, Lebo Pride is dedicated to increasing visibility and acceptance of LGBTQ+ individuals in the Mt. Lebanon community, and the stigma that would result from the Plaintiffs' requested opt-out, as outlined in the *Amicus* brief, threatens to undo the work Lebo Pride has already accomplished, and hinder its ability do this work in the future. Lebo Pride and its membership have a direct and immediate interest in this case, not a merely tangential or political one, as they are among the constituents who will be most directly impacted by the opt out Plaintiffs seek.

Given that the Court's reasoning under the first factor of the *Sciotto* test appears to be based on a misapprehension of Lebo Pride's arguments that amounts to a manifest error, Lebo Pride asks that this Court reexamine its brief and reconsider its decision on this factor.

### B. The Second *Sciotto* Factor

Under the second factor of the *Sciotto* test, a petitioner must show that its "interest is not represented competently or at all in the case." *Sciotto*, 70 F. Supp. 2d at 555. With respect to this factor, the Court held that "defendants' interests in defeating plaintiffs' claims are similar to the interests of Lebo Pride," and that "the curriculum and policy changes Lebo Pride wants to advocate in its amicus brief are not at issue in this case." (ECF No. 130 at 4). Again, this characterization indicates that the Court has misapprehended Lebo Pride's argument or has taken Plaintiffs' framing of the brief at face value. At no point in its brief does Lebo Pride call for curriculum or policy changes. In fact, Lebo Pride is explicit that curriculum and policy decisions, including the decision of whether to implement LGBTQ-inclusive curriculum, should be made

7

by the District and through normal political processes (*see* ECF 117-1 at 12 & n. 54). Lebo Pride's brief is silent on what the District should or must do, and instead speaks only to the question of whether Plaintiffs have a constitutional right to demand that the District provide all parents with an opt out from instruction on gender identity.

As for the Court's finding that "defendants' interests . . . are similar to the interests of Lebo Pride," while Lebo Pride did fashion its brief in support of Defendants' Motion for Summary Judgment, Lebo Pride has a unique interest that "is not represented competently or at all in the case." As stated in its Motion for Leave to File, Lebo Pride is a local nonprofit with deep ties to the Mt. Lebanon community. Its members are LGBTQ+ individuals and allies, including students in the District, parents with children in the District, and community members who regularly interact with the District. As an organization enmeshed in issues affecting the LGBTQ+ community and dedicated to serving that community, Lebo Pride has a different conception of harm here than does the District. While it appears that the District sees an opt out as a less harmful, or even *harmless* compromise, as evidenced by the fact that the District agreed to implement an opt out as part of the Stipulated Order of Court (ECF No. 12), Lebo Pride believes that opt outs inflict serious harm on transgender students and provides extensive legal precedent and social science research to support this contention. Lebo Pride's interest in preventing a compromise that will directly harm its members is categorically different from the interest of any other party, and up to this point has not been represented competently or at all.

Furthermore, as an organization whose membership includes students and parents within the District, Lebo Pride is in a much different position than the District, which must consider not just the unique needs of individual children, but a variety of competing factors, including budgets, union contracts, enrollment, academic standards, and district policies. Not only does

8

Lebo Pride have a specific and targeted interest in preventing discrimination against transgender students – an interest that is only one among many for the District – but as an organization focused on LGBTQ+ issues, it offers a perspective that is otherwise absent from the record, namely insights into the lived experiences of the transgender children who will be impacted by this Court's decision. The Third Circuit has previously held that "permitting persons to appear in court . . . as friends of the court . . . may be advisable where third parties can contribute to the court's understanding." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 82 (D.N.J. 1993) (*citing Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir.1987)). If this Court reconsiders its *Amicus* Opinion, Lebo Pride's brief can assist the Court in understanding the larger context in which this case is situated and the impact Plaintiffs' requested relief will have on students and families in the District.

Thus, Lebo Pride presents a unique perspective and legal argument, which were overlooked by the Court. These contributions will aid the Court's understanding and are otherwise not represented in this case. Lebo Pride, therefore, requests that the Court reconsider its finding that *amici* did not satisfy the second factor of the *Sciotto* test.

C. **The Third Sciotto Factor**

The third factor of the *Sciotto* test examines whether petitioner's "proffered information is timely and useful." *Sciotto*, 70 F. Supp. 2d at 555. Lebo Pride's brief offers important analysis of caselaw, well-developed social science research, and sworn declarations from community members to aid this Court in answering a specific and critical legal question that this Court posed to the parties. This analysis is both timely and useful.

Regarding timeliness, the Court seems to adopt, almost word-for-word, Plaintiffs' contention that accepting Lebo Pride's brief would require reopening discovery. (ECF No. 130 at

9

4–5). This is a clear error of law. *Bootay*, 437 F. App'x at 147. Lebo Pride's brief offers "legislative facts" in the form of thorough social science research, all of it referencing to publicly available studies and declarations from community members. "Unlike adjudicative facts, which are ordinarily established by reference to the case record, legislative facts include "material set forth in the briefs" filed by the parties." *Project Vote v. Kelly*, 805 F. Supp. 2d 152, 180 n. 21 (W.D. Pa. 2011) (citing *Daggett v. Commission on Governmental Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir.1999)). The advisory committee's note to Federal Rule of Evidence 201 points out that "[i]n determining the content or applicability of a rule of domestic law, the judge is unrestricted in his investigation and conclusion. He may reject the propositions of either party or of both parties. He may consult the sources of pertinent data to which they refer, or he may refuse to do so. He may make an independent search for persuasive data or rest content with what he has or what the parties present." Fed. R. Evid. 201. The note specifically applies this convention to judicial access to *legislative facts*, explaining that "[i]t renders inappropriate any limitation in the form of indisputability, any formal requirements of notice other than those already inherent in affording opportunity to hear and be heard and exchanging briefs, and any requirement of formal findings at any level." *Id*.

When it comes to legislative facts, like those presented by Lebo Pride, the Court is free to accept this sort of information as it sees fit and to give it the level of consideration it deems appropriate without opening discovery. *See In re Meinen*, 228 B.R. 368, 376 (Bankr. W.D. Pa. 1998) (accepting, over objection, affidavit attached to an *amicus* brief because "(a) the content of the affidavit relates solely to matters contained within [amici's] brief, (b) it is clear to the Court that the affidavit was only offered to assist the Court in considering [amici's] brief, and (c) it is solely within this Court's discretion to determine the extent and manner of [amici's] participation

in the instant matter as amicus curiae, . . . which means that the Court can either accept or reject the affidavit for consideration as it sees fit"). Given that the declarations and research presented in Lebo Pride's *Amicus* brief are legislative facts that go to the weight of the evidence, it is well within the discretion of this Court to accept this brief without opening discovery. Consequently, there is no reason for Lebo Pride's brief to add any cost or delay to these proceedings, and thus no reason to deny Lebo Pride's Motion for Leave to File on timeliness grounds.[2]

As for the court's finding on the usefulness of the brief, the Court seems to have found that the brief is not useful based on Lebo Pride's alleged misstatement or distortion of two facts: 1) whether the District currently has elementary school curriculum that includes instruction on gender identity and 2) whether the District's policies already provide the opt outs Plaintiffs request. (ECF No. 130 at 5). These findings are themselves misstatements of Lebo Pride's brief that amount to clear errors of fact. *Bootay*, 437 F. App'x at 147.

On the first of these two statements, Lebo Pride has never stated that the District's published elementary school curriculum includes education on gender identity. To the contrary, Lebo Pride specifically argued in its brief that "[e]ven if the Court finds that the District erred in the process it used to approve the instructional materials" at issue in this case, it could nonetheless allow future instruction on gender identity if the District "utilize[d] its standard processes to develop, review, and implement this curriculum." (ECF No. 117-1 at 12).

This distinction, however, is irrelevant to Lebo Pride's principal argument that, when school districts implement LGBTQ-inclusive curriculum to protect transgender students, parents

---

[2] If the Court feels compelled to require discovery due to the inclusion of the declarations, Lebo Pride is willing to remove these affidavits from its brief. While Lebo Pride included the declarations as it believed they would "contribute to the court's understanding" of the lived experiences of transgender students and families in Mt. Lebanon who will be directly affected by this Court's decision, *see Liberty Lincoln Mercury*, 149 F.R.D. at 82, the legal arguments in the brief and Lebo Pride's unique perspective and contributions to the Court's understanding fully stand without these affidavits. Thus, Lebo Pride would be willing to redact them from the brief to further alleviate any concern about the need to reopen discovery.

11

have no constitutional right to opt their children out of this curriculum because such a curriculum is already narrowly tailored to serve a compelling state interest. The specifics of this argument are important here because Plaintiffs are not simply asking for monetary relief from a past harm. In fact, Plaintiffs proactively dropped their sizable monetary request and instead focus first and foremost on declaratory relief, which would require the District to provide parents with advanced notice and an opt out *in perpetuity*. Whether or not the District *currently* includes instruction on gender identity in its elementary school curriculum is not dispositive because Plaintiffs are not simply asking for relief from a current practice, but relief from all potential future practices. Thus, while Lebo Pride disagrees that it ever represented that the District's current curriculum includes elementary school lessons on gender identity, rejecting *Amici*'s brief due to this supposed misrepresentation of the factual record misses the point of this brief altogether. Lebo Pride's brief illustrates for the Court the existence of a compelling state interest and narrowly tailored practice, that directly undermines Plaintiffs' right to the permanent, far-reaching declaratory relief Plaintiffs seek.

       To the second of the Court's two statements – that the District already offers relevant opt outs – the Court seems to be suggesting that Lebo Pride's arguments about opt-outs are not useful because, either 1) the District already offers opt outs for lessons on gender identity and/or 2) the District already offers other types of opt outs, and therefore, additional opt outs about gender identity would not be harmful. To support its argument that Lebo Pride's brief is not useful, the Court relies on the following undisputed statement of fact: "[I]t is undisputed that the District has a practice of providing advance parental notice to parents of fifth and eighth grade students concerning instruction on human development and sexuality and to parents of eleventh grade students concerning instruction on HIV, sexuality, birth control/contraceptives, and

sexually transmitted infections due to the sexually explicit character of such subjects and provides parents the opportunity to excuse or 'opt-out' their students from such instruction." (ECF No. 130 at 5, quoting ECF 117 ¶ 15).[3] Even if the District provides opt outs for topics which all parties agree are "sexually explicit," gender identity is not a sexually explicit topic and is absolutely and wholly distinct from sexuality. Not a single item in the list cited by the Court encompasses or is related to gender identity and any contention otherwise would seem to evince a fundamental misunderstanding of the differences between sexuality, sexual orientation, and gender identity.[4] The Court's reference to the District's fifth and eighth grade instruction on human development and sexuality, also seems to overlook Lebo Pride's explanation of LGBTQ-inclusive curriculum, which, as described in the *Amicus* brief, can be woven into topics as varied as History, Art, Science, and Math, and is certainly not limited to topics usually reserved for Sexual Education courses. (ECF No. 117 at n. 17). If the Court has, in fact, conflated gender identity and sexuality to find that the cited list of opt-out topics already includes opt outs from instruction on gender identity this is further evidence as to why the perspectives of the LGBTQ-advocates, parents, and students presented in Lebo Pride's brief are so vitally important here.

If the Court is not conflating sexuality and gender identity, and has instead concluded that Lebo Pride's "discussion of the alleged harms resulting from allowing parental notice and opt out

---

[3] Lebo Pride notes that in its *Amicus* Opinion the Court misattributed this quote to Lebo Pride's *Amicus* Motion. This language is from the Defendants' Responsive Concise Statement of Material Facts in Opposition to Plaintiffs' Summary Judgment Motion. (ECF 114 ¶ 15).

[4]
> There is no dispute or controversy that sexual orientation and gender identity are distinct, yet there is significant confusion among the general public, policy makers, and judges about the differences. Sexual orientation describes a person's enduring sexual attraction to another person and may be same sex, opposite sex, or both. Gender identity is "[a]n internal sense of being male, female or something else, which may or may not correspond to an individual's sex assigned at birth or sex characteristics." One's sexual orientation does not predict or say anything about one's gender identity and vice versa.

Pamela S. Katz, *Now Something for the Glass Half-Empty Crowd: Bostock v. Clayton County, Georgia Explained*, 30 Tul. J.L. & Sexuality 53, 57–58 (2021) (footnotes omitted).

13

practices is . . . confusing," (ECF No. 130 at 5), because the District already offers opt outs for gender identity or other topics, this point is equally concerning. Such a conclusion seems to imply that once a school district puts a policy into place, the existence of said policy is evidence that the policy itself cannot be harmful. Of course, our courts have a long history of finding that widespread, often well-established school policies and practices can, in fact, be extremely harmful to students – segregating students based on race, denying necessary services to students with disabilities and English Learners, unjustifiably interfering with student speech, and excluding undocumented students, to name just a few such policies. Lebo Pride is hopeful that it misunderstands the point the Court is trying to make by pointing out that the District already has opt-outs for sexually explicit instruction, and that the Court is neither conflating sexuality and gender identity, nor assuming that an opt out for gender identity could not harm students merely because there are already some opt outs in place.

Lebo Pride provides extensive evidence showing the harm opt outs can cause to transgender students in order to address the Court's statement on motion to dismiss that "the District must demonstrate why it has a compelling need to prevent these particular Plaintiffs from opting their children out of this particular instruction." (ECF No. 38 at 33). The District has a compelling need to prevent opt outs, because, as Lebo Pride's brief shows, opt outs from instruction to gender identity can cause harm to transgender students, specifically by increasing shame among transgender students and by making LGBTQ-inclusive curriculum less effective at reducing rates of discrimination against transgender students. With all due respect, the Court here seems to have accepted Plaintiffs' baseless assertion that Lebo Pride does not fully understand the factual record in this case,[5] and as a result, made a determination under the third *Sciotto*

---

[5] As further evidence that Plaintiff has mischaracterized Lebo Pride's understanding of the factual record, Lebo Pride highlights for the Court two additional factual errors Plaintiffs incorrectly allege *amici* made in its brief. First,

factor, the Court relies on a clear mischaracterization of Lebo Pride's understanding of the factual record and overlooks basic arguments included in Lebo Pride's brief. *Black Bear*, 2021 WL 4751746, at *3. As such, the Court's finding that Lebo Pride's brief is not useful because it does not consider the factual record relies on a "clear error of law or fact," *Bootay*, 437 F. App'x at 1447, and Lebo Pride asks that the Court reconsider its finding under the third *Sciotto* factor.

### D. The Fourth *Sciotto* Factor

Under the fourth *Sciotto* factor, a petitioner should not be partial to a particular outcome in the case. On this final factor, the Court found that Lebo Pride is partial to a particular outcome because "Lebo Pride is advocating for defendant Mt. Lebanon School District to adopt a different curriculum and opt out policies, rather than analyzing the legal merits of the specific claims that are at issue in this case." (ECF No. 130 at 5). Again, this characterization overlooks the specific argument *Amici* presents in its brief. Lebo Pride would once again reiterate that, at no point in its brief did it advocate for the School District to adopt *any* curriculum and that Lebo Pride was clear that any curriculum, including an LGBTQ-inclusive curriculum, should be adopted and implemented through standard District processes. (ECF No. 117-1 at 12 & n. 54). Rather, Lebo

---

Plaintiffs claim that Lebo Pride's "proposed brief and affidavits repeatedly refer to the importance of the gender identity portion of the District's 'sex ed' class." (ECF 118 at 5). Even a cursory review of Lebo Pride's filings would reveal that the body of Lebo Pride's brief *never* mentioned the District's sex ed classes, and certainly does not refer to them as important. The only time sex ed is referenced in any of Lebo Pride's filings is in one declaration, wherein the affiant discusses the *personal* value sex ed classes had for her. This statement was not relied on or even mentioned in Lebo Pride's legal arguments, and contrary to Plaintiffs' assertion was certainly not "repeatedly refer[ed] to." Additionally, Plaintiffs argue that Lebo Pride does not understand that "if [ ] instruction [on gender identity] was actually placed in the published curriculum, then parents would have the ability to opt out under 22 Pa. Code § 4.4(d)." This, again, is a complete misrepresentation of Lebo Pride's brief, which *directly* addresses how § 4.4(d) applies to Lebo Pride's constitutional arguments. (*See* ECF No. 117-1 at n. 49). Moreover, Plaintiffs' contention with respect to § 4.4(d) misrepresents Plaintiffs' own claims, as § 4.4(d) only provides for opt outs based on religious beliefs and Plaintiffs are asking that parents be offered opt outs for any reason. Plaintiffs' assertion that *Amici* don't recognize the applicability of § 4.4(d), is not only an obvious error, but also distorts the scope of Plaintiffs' own requested relief. Thus, the "facts" relied on by Plaintiffs to show that Lebo Pride does not understand the factual record in this case, simply do not represent an honest reading of Lebo Pride's brief and should not be given any credence in the Court's analysis of whether Lebo Pride's brief is useful.

Pride's brief attempted to answer a purely legal question posed by the Court in its Opinion on Motion to Dismiss: whether the District has a compelling need to prevent Plaintiffs from opting their children out of instruction on gender identity (*see* ECF 38 at 33). Lebo Pride presents substantial evidence – both legal precedent and social science research – showing that the answer to this legal question is yes; however, nowhere in its brief does Lebo Pride contend that the District *must* or even *should* implement this curriculum. Lebo Pride's brief makes the point *not* that the District has an obligation to implement lessons on gender identity, but that parents do not have a constitutional entitlement to opt their children out of these lessons.

Based on the Court's reasoning under the fourth factor of the *Sciotto* test, it is clear that the Court misinterpreted Lebo Pride's argument as some sort of policy appeal, overlooking the clearly legal argument presented therein. If the Court is, in fact, relying on this fundamental misapprehension about Lebo Pride's brief as grounds for its determination under the fourth factor of the *Sciotto* test, then the Court has made a clear error, which Lebo Pride asks that it reconsider.[6] *Bootay*, 437 F. App'x at 146-47.

## IV. Conclusion

While Lebo Pride recognizes that reconsideration is rarely granted, relief is warranted here based on numerous "manifest errors of law or fact," *Bootay*, 437 F. App'x at 147, and because the Court overlooked and misapprehended the arguments presented in Lebo Pride's Motion for Leave to File and attached brief. *Black Bear*, 2021 WL 4751746, at *3. The Court's *Amicus* Opinion relies on mischaracterizations of Lebo Pride's argument by Plaintiffs, who paint Lebo Pride's request as unreasonable, uninformed, and untimely. Even a cursory examination of

---

[6] Furthermore, as discussed in section III.B., while Lebo Pride fashioned its *Amicus* Brief in support of Defendants' Motion for Summary Judgment, it is not partial to the particular outcomes sought or agreed to by Defendants, especially any compromise that would allow for an opt out, such as the opt out Defendants agreed to as part of the Stipulated Order of Court.

the *Amicus* Brief reveals that this is not the case. Lebo Pride has demonstrated a concrete interest in the sweeping declaratory relief Plaintiffs request in this case, and its *Amicus* Brief outlines in great detail where Plaintiffs' constitutional arguments fall short. Far from a mere policy argument, Lebo Pride's brief addresses squarely constitutional questions that are not only at the center of this case, but which were directly raised by this Court in its Opinion on Motion to Dismiss. Because the Court overlooked these argument in denying Lebo Pride's Motion for Leave to File and relied on misstatements of fact and law, it should reconsider its Order Denying Lebo Pride's Motion for Leave to File an *Amicus Curiae* Brief.

Respectfully submitted,

| | |
|---|---|
| */s/ Jacqueline Perlow* | */s/ Daniel G. Vitek* |
| Jacqueline Perlow | Daniel G. Vitek |
| PaID 321594 | PaID 209013 |
| jperlow@womenslawproject.org | dvitek@cpjlaw.org |
| | |
| | */s/ Anne Puluka* |
| | Anne Puluka |
| | PaID 322652 |
| | apuluka@cjplaw.org |
| | |
| Women's Law Project | Community Justice Project |
| 239 Fourth Avenue, Suite 2108 | 100 Fifth Avenue, Suite 900 |
| T (412) 281-2892 | Pittsburgh, PA 15222 |
| | T (412) 434-6002 |

Counsel for Lebo Pride